In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2292

JOSHUA BUNN,

*Plaintiff-Appellant*,

*v.*

KHOURY ENTERPRISES, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:11-cv-01540 — **William T. Lawrence**, *Judge.*

ARGUED DECEMBER 13, 2013 — DECIDED MAY 28, 2014

Before EASTERBROOK, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* Joshua Bunn quit his job at a Dairy
Queen franchise and sued the franchisee, his former employer,
under the Americans with Disabilities Act. Bunn, who is
vision-impaired, believed that the employer failed to accom-
modate his disability as required by law and that it subjected
him to illegal disparate treatment when it reduced his sched-
uled hours during the winter months. The district court

granted the employer's motion for summary judgment on all claims, and Bunn appealed. After disposing of an initial procedural argument, we find that Bunn's failure-to-accommodate claim falls short because the employer *did* reasonably accommodate Bunn's disability. Next, we find that his disparate treatment claim fails because he has not introduced sufficient evidence to create a triable issue of material fact and because the undisputed facts show that the defendant is entitled to judgment as a matter of law. We affirm the judgment of the district court in all respects.

## I. BACKGROUND

Joshua Bunn is legally blind. He has no vision in one eye and greatly reduced vision in the other. On July 25, 2010, Bunn applied for employment with Khoury Enterprises ("Khoury"), a firm operating Dairy Queen franchises in the Indianapolis area. On September 27, 2010, Khoury hired Bunn for an hourly position. The parties dispute whether that position was formally classified as "full-time" or "part-time," but for the purposes of this lawsuit that distinction is irrelevant.

Typically, hourly employees at Khoury's Dairy Queen stores were required to rotate between various duty stations. These included preparing ice cream treats, preparing grilled food, working the cash register, maintaining the dining area, and more. Bunn's first assignment was to the "Chill" department, in which Dairy Queen's well-known ice cream treats were prepared. Bunn was unable to perform certain duties within the department without accommodation. The type on the ingredient labels was too small, and the monitors displaying orders to be filled were too high.

Store manager Larry Johnson took responsibility for finding a position better suited to Bunn's needs. Eventually, he trained Bunn in the "Expo" department, in which employees were responsible for delivering food to dine-in customers and keeping the store and the dining area clean. Bunn was able to perform his duties in the Expo department with minimal accommodation, and Johnson decided to schedule Bunn exclusively in Expo. That meant Bunn's position was different from the position held by most of his hourly peers, as they continued to rotate between departments while he stayed put. But it did not mean that Bunn was given fewer hours. From the time he was trained until the time he was suspended due to insubordinate conduct towards a supervisor, Bunn was scheduled full-time.

On November 17, 2010, night manager Norma Caballero asked Bunn to put his cell phone away while working (Bunn had been warned about using his phone during his shift on multiple occasions). Bunn refused, and Caballero reported that he gave her an "attitude" for the rest of the shift, including shoving a trash can at her when she asked him to take out the garbage. Caballero contacted Larry Johnson, and Bunn was suspended for ten days. Bunn signed a written suspension notice indicating that he understood why he was being disciplined.

Bunn's hours decreased following the suspension. In December 2010, Bunn requested and received seven days off. Khoury's restaurants were also closed for the holidays, and on occasion closed due to inclement weather. Bunn worked only 23.41 hours that month. In January 2011, after returning from vacation, Bunn worked just 12.33 hours. It is undisputed that,

given the nature of a Dairy Queen franchise's business, Khoury's restaurants saw decreased demand during the cold weather months and adjusted many employee schedules accordingly. On February 1, 2011, Bunn submitted his resignation. He told Johnson that he felt he could work more hours with another employer; Johnson agreed.

After his resignation became effective, Bunn filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC declined to pursue the charge and issued a right-to-sue letter. Bunn brought this lawsuit alleging failure to accommodate his disability and disparate treatment, both in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112. The district court granted summary judgment in Khoury's favor on all claims, finding that no material facts were genuinely disputed and that the undisputed facts entitled Khoury to a judgment as a matter of law. Bunn appeals, and we affirm.

## II.   ANALYSIS

There are three issues before us on appeal: (1) whether the district court erred by granting summary judgment before Bunn had a chance to respond to a late-filed affidavit submitted by the defendant; (2) whether the district court erred in granting summary judgment to the defendant on Bunn's failure-to-accommodate claim; and (3) whether the district court erred by granting summary judgment to the defendant on Bunn's disparate treatment claim. We affirm the district court's treatment of this case in all respects.

### A. Bunn's Procedural Argument

Bunn begins by complaining about the briefing schedule. Khoury filed its motion and supporting brief for summary judgment on February 1, 2013. The Larry Johnson "affidavit" attached to those filings consisted of a signature page, and nothing else. Nonetheless, Khoury's brief relied heavily on facts allegedly supplied by the missing body of that affidavit. Bunn twice filed for extensions of time to respond to Khoury's motion for summary judgment, ultimately filing a response on March 20, 2013. Bunn was aware of the deficiency in Khoury's filings at the time of his response; he noted it in his brief, but "speculated" that the absence of the affidavit made little difference. On April 30, 2013, the district court ordered Khoury to file the missing pages, and Khoury complied on May 6, 2013. On May 13, 2013, the district court granted Khoury's motion for summary judgment. Bunn believes it was an error for the district court to fail to give him a separate, additional response period in which to file a brief addressing the completed Johnson affidavit. We disagree for two reasons.

The first reason is a legal one. Bunn's argument, at its core, attacks the district court's application of its own local rules. Local Rule 56.1(b) for the Southern District of Indiana affords a litigant 28 days to respond to a "summary judgment motion." Bunn was given 28 days (and then some) in which to respond to Khoury's motion. There is nothing in the plain language of the rule concerning an *additional* 28-day response period when one party is directed to correct a clerical error; the rule only applies to a response to a "motion," not to a misfiled affidavit. The district court's decision not to wait for a response therefore rested on its interpretation of an ambiguity, or of an

area of no coverage, in the local rules. "[D]istrict courts have considerable discretion in interpreting and applying their own local rules." *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 223 (7th Cir. 1988). We will intrude on that discretion only where we are "convinced" the district court made a mistake. *Id*. We cannot say we are "convinced" the district court made a mistake in this case when there is nothing at all in the rules to suggest that it did. What we can say is that the district court made a discretionary call concerning a matter not directly covered by the local or federal rules, as it was perfectly entitled to do.

The second reason we find Bunn's procedural argument unpersuasive is a practical one. Bunn was not prejudiced in the slightest by Khoury's failure to attach the complete Johnson affidavit to its motion for summary judgment. Every fact derived therefrom on which Khoury intended to rely was cited within its brief supporting the motion. Thus, even if Bunn could not look at the affidavit itself, he was aware of its contents and could have submitted contradictory evidence with his response, if he had any. He was also free to bring the matter to the district court's attention at any time prior to his long-delayed submission of a response brief. But he did not, and, in his response brief, Bunn himself averred that the missing affidavit made little difference. There is no legal or equitable reason for us to reverse on these grounds.

*B.   Failure to Accommodate*

Bunn asks us to review the district court's adverse grant of summary judgment on his failure to accommodate claim, a task which we undertake *de novo*. *Swetlik v. Crawford*, 738 F.3d 818,

826 (7th Cir. 2013). Summary judgment is appropriate where the admissible evidence shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). A "material fact" is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any such material fact, and summary judgment is therefore inappropriate, when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. On the other hand, where the factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is nothing for a jury to do. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, we view the record in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

Bunn brought his claim under the Americans with Disabilities Act. The ADA provides that a covered employer shall not "discriminate against a qualified individual on the basis of disability[.]" 42 U.S.C. § 12112(a). "Discrimination," for the purposes of Section 12112(a), includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).

We have derived a three-part test from the statutory language. In order to establish a claim for failure to accommodate, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005) (citing *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001)). Khoury does not dispute that Bunn's case satisfies the first two prongs. But the district court granted summary judgment to Khoury because Bunn's case fails the third prong: Khoury *did* reasonably accommodate Bunn's disability.

We agree with that conclusion. The term "reasonable accommodation," in the context of this case, means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable [a qualified] individual with a disability … to perform the essential functions of that position[.]" 29 C.F.R. § 1630.2(o)(1)(ii). Particular examples include "[m]aking existing facilities used by employees readily accessible to and usable by individuals with disabilities[,]" as well as "[j]ob restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities." 29 C.F.R. § 1630.2(o)(2)(i)–(ii). Of course, that list is not exhaustive. In the general sense, "an accommodation is any change in the work environment or in the way things are

customarily done that enables an individual with a disability to enjoy equal employment opportunities." 29 C.F.R. pt. 1630 app. § 1630.2(o).

It is undisputed that, when it became clear that Bunn could not perform the rotating duties of a regular hourly employee, store manager Larry Johnson worked with him to determine which job functions he could perform and which he could not. Bunn was best able to perform the duties of an employee in the Expo department. Accordingly, instead of rotating Bunn through various departments, some of which were unsuitable for him, Johnson instructed Bunn's immediate supervisors to schedule him exclusively in Expo. That "change … in the way things [were] customarily done" enabled Bunn to enjoy equal employment opportunities, as evidenced by the undisputed fact that he was scheduled full-time in Expo from his hire date until his suspension. 29 C.F.R. pt. 1630 app. § 1630.2(o). It might also be called a "job restructuring," or a "modified work schedule." 29 C.F.R. § 1630.2(o)(2)(ii). In short, it was exactly the kind of accommodation envisioned by the regulations applicable to the ADA.

That is the end of our inquiry; the undisputed facts show that Khoury did what it was required to do by law. Bunn's only argument to the contrary is that he asked for additional, or different, accommodations and was rebuffed. But even if we credit his version of events—which we are obligated to do at the summary judgment stage—that fact is not material. While the EEOC regulations accompanying the ADA do suggest that "it *may* be necessary for the [employer] to initiate an informal, interactive process with the [employee]" to determine an appropriate accommodation, 29 C.F.R. § 1630.2(o)(3) (emphasis

added), there is no separate cause of action for a failure of that interactive process. In this area of the law, we are primarily concerned with the ends, not the means: "Because the interactive process is not an end in itself, it is not sufficient for [an employee] to show that [an employer] failed to engage in an interactive process or that it caused the interactive process to break down." *Rehling v. City of Chicago*, 207 F.3d 1009, 1015–1016 (7th Cir. 2000); *see also Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1059 n.1 (7th Cir. 2014). Ultimately, Khoury did provide a reasonable accommodation to Bunn. Bunn's apparent displeasure with the way in which Khoury decided on that accommodation, or with its failure to provide the exact accommodation he would have preferred, is irrelevant. *Id.* at 1016 ("The ADA seeks to ensure that qualified individuals are accommodated in the workplace, not to punish employers who, despite their failure to engage in an interactive process, have made reasonable accommodations."). We affirm the district court's grant of summary judgment on Bunn's failure-to-accommodate claim.

## C.    *Disparate Treatment*

Finally, Bunn contests the district court's adverse grant of summary judgment on his disparate treatment claim. Once again, we review *de novo*, mindful of the analytical rubric laid out for us by Rule 56. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 600 (7th Cir. 2011). Once again, we affirm the judgment of the district court.

### 1.    *Direct Method*

A plaintiff claiming disparate treatment in violation of the ADA can rely on two different methods of proof to survive a

summary judgment motion. Bunn relies on both. The first is the "direct method," in which a plaintiff must show that a genuine issue of material fact exists with respect to each of the three elements he will eventually be required to prove at trial: (1) that the plaintiff is disabled within the meaning of the ADA; (2) that the plaintiff is qualified to perform the essential functions of the job with or without accommodation; and (3) that the plaintiff has suffered an adverse employment action because of his disability. *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1127 (7th Cir. 2006).

Khoury concedes the first two prongs of the test, but contests the third. In theory, the third prong—tying an adverse employment action to a discriminatory animus—can be proved with either direct or circumstantial evidence. *Dickerson*, 657 F.3d at 601. But direct evidence, which might take the form of an admission of discriminatory intent by the relevant decisionmaker within the defendant employer's ranks, is understandably rare in ADA cases. Most ADA plaintiffs therefore rely on circumstantial evidence, which might include:

> (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action.

*Id.* (citing *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 586–87 (7th Cir. 2011); *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 708 (7th Cir. 2011)).

Bunn, like most ADA plaintiffs, purports to rely on circumstantial evidence. But he presents none that is sufficient to create a genuine issue of fact. Even if we assume that Khoury subjected Bunn to an "adverse employment action"—an assumption which is not clearly supported by the evidence of record[1]—he has suggested only three items which he believes will prove that such disparate treatment was due to his disability.

The first is his contention that he was disciplined for looking at his cell phone during his shift, while non-disabled employees were permitted to do so. There is no evidence in the record—not even in Bunn's own affidavit—to support Bunn's contention that non-disabled employees were not disciplined for similar conduct. Without any admissible evidence to support Bunn's claim, we cannot say there is a genuine dispute.

The second is Bunn's assertion that, when he asked Johnson if certain accommodations could be made to allow Bunn to work in departments other than Expo, Johnson rebuffed him, saying something like, "I will place you wherever I want," without regard to sight restrictions. But it is undisputed that Johnson was the store manager, and that scheduling all of his employees—not just Bunn—wherever he wanted was a

---

[1] The reduction in Bunn's scheduled hours during the winter months following his suspension is the "adverse employment action" of which he complains, but it is difficult to parse out how much of that was due to his own requests for time off and how much was due to employer-side scheduling changes. Obviously, granting requested vacation days is not an "adverse employment action."

fundamental part of his job description. It is not evidence of discrimination when a manager tells an employee, "Leave the managing to me." Furthermore, the undisputed evidence shows that Johnson in fact scheduled Bunn in a position which he could perform with minimal accommodation. Given that, it is hard to see how a rational jury could consider Johnson's statement about scheduling discretion to be evidence of a discriminatory animus. Johnson's comment does not create a triable issue.

The third is much like the second. Bunn claims that when he asked Johnson to schedule him for more hours, Johnson told Bunn he would schedule him for however many hours he saw fit. Again, this is simply a manager exercising control over an employee. There is no hint of disability discrimination in the content or the context of the quote. We are typically very cautious about relying on "stray remarks" as evidence of discriminatory animus even where the content *is* arguably discriminatory. *See, e.g., Teruggi v. CIT Grp./Capital Fin., Inc.,* 709 F.3d 654, 661 (7th Cir. 2013); *Merillat v. Metal Spinners, Inc.,* 470 F.3d 685, 694 (7th Cir. 2006). There is even more reason to be cautious here, where the remarks in question do not single out the plaintiff based on his disability or any other individually distinguishing characteristic.

In short, Bunn has not produced sufficient evidence to create a triable issue of fact as to whether Khoury took an adverse employment action against him because of his disability. He therefore cannot rely on the direct method of proof to survive summary judgment.

### 2. *Indirect Method*

The second method of proof available to an ADA plaintiff hoping to survive summary judgment is the "indirect method," originally developed in the Title VII context by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its multitudinous progeny. The indirect method of proof, which exists only to help plaintiffs survive summary judgment and falls away at the trial stage, follows a burden-shifting approach. First, the employee establishes a *prima facie* case by showing: (1) that he is disabled under the ADA; (2) that he was meeting his employer's legitimate expectations; (3) that he suffered an adverse employment action; and (4) that similarly situated employees without a disability were treated more favorably. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009). If the employee is able to establish a *prima facie* case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. *Dickerson*, 657 F.3d at 601 (citing *Rooney v. Koch Air, LLC*, 410 F.3d 376, 381 (7th Cir. 2005)). The employer's burden in that regard is one of production, not persuasion; the burden of persuasion remains with the employee throughout the process. *South v. Ill. Envtl. Prot. Agency*, 495 F.3d 747, 751–52 (7th Cir. 2007). Finally, if a legitimate reason is produced, the employee must prove by a preponderance of the evidence that the employer's stated reason is a lie. *Dickerson*, 657 F.3d at 601; *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008) ("Pretext means a dishonest explanation, a lie rather than an oddity or an error.") (internal quotation marks omitted).

Bunn fails the indirect method at every stage. First, Bunn has not made out a *prima facie* case of discrimination. The undisputed evidence shows that he did not meet his employer's legitimate expectations. He missed an inordinate amount of work in his first several months on the job, and he shoved a trash can at the night manager, resulting in a suspension. He has also completely failed to identify, let alone discuss, a similarly situated non-disabled employee who was treated more favorably. That inquiry is too fact-intensive for us to rely on conjecture alone. *See, e.g, Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000) (an employee is similarly situated only where he is directly comparable in all material aspects, including performance, qualifications, and conduct). It is Bunn's responsibility to identify a satisfactory comparator to the court, and he has not done so. When an employee cannot make out a *prima facie* case, that is the end of it; summary judgment is warranted.

Second, even if Bunn could establish a *prima facie* case, Khoury has met its burden of producing a legitimate reason for the reduction in Bunn's scheduled hours—several reasons, in fact. Bunn's hours were reduced during the winter months following his suspension because of weather closings, vacation days (which Bunn himself requested), and reduced demand for Dairy Queen treats during the dead of winter. Bunn has not introduced a single shred of evidence suggesting that these explanations are lies, let alone evidence sufficient to meet the preponderance standard. *Dickerson*, 657 F.3d at 601. There is no genuine issue for trial.

In summary, we agree with the district court that Khoury is entitled to summary judgment on Bunn's disparate treatment claim. Bunn has failed to create any triable issues of fact through either the direct or the indirect method of proof, and the undisputed facts entitle Khoury to judgment as a matter of law.

### III.  CONCLUSION

Bunn's procedural argument asks us to wrest away from the district court its discretion to interpret and apply its own local rules. We decline to do so. His failure-to-accommodate claim fails because Khoury in fact provided a reasonable accommodation, and his disparate treatment claim fails because he has not produced sufficient evidence to create a triable issue of fact under any method of proof. We AFFIRM the judgment of the district court.