**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-2103**

YASMIN REYAZUDDIN,

Plaintiff − Appellant,

v.

MONTGOMERY COUNTY, MARYLAND,

Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, Senior District Judge. (8:11-cv-00951-DKC)

Argued: September 27, 2018                    Decided: November 21, 2018

Before DIAZ, THACKER, and HARRIS, Circuit Judges.

Affirmed by unpublished opinion. Judge Diaz wrote the opinion, in which Judge Thacker and Judge Harris joined.

**ARGUED:** Joseph B. Espo, BROWN, GOLDSTEIN & LEVY, LLP, Baltimore, Maryland, for Appellant. Patricia Lisehora Kane, OFFICE OF THE COUNTY ATTORNEY, Rockville, Maryland, for Appellee. **ON BRIEF:** Anthony J. May, Jean M. Zachariasiewicz, BROWN, GOLDSTEIN & LEVY, LLP, Baltimore, Maryland; Albert Elia, TRE LEGAL PRACTICE, Fremont, California, for Appellant. Marc P. Hansen, County Attorney, John P. Markovs, Deputy County Attorney, Patricia Victoria Haggerty, Associate County Attorney, Erin J. Ashbarry, Associate County Attorney, Edward B. Lattner, Chief, Division of Human Resources and Appeals, OFFICE OF THE

COUNTY ATTORNEY, Rockville, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Yasmin Reyazuddin appeals from a ruling that her employer reasonably accommodated her for purposes of the Rehabilitation Act. We hold that the district court did not err in finding reasonable accommodation and in denying Reyazuddin equitable relief. Accordingly, we affirm.

I.

Yasmin Reyazuddin, who is completely blind, answered calls at a call center for a Montgomery County, Maryland, government department.[1] She used an audio program to access computer software. In 2008, Reyazuddin's supervisor told her the County was consolidating its call centers into one location called MC311. The supervisor noted Reyazuddin's accessibility concerns and assured her the County would move her to MC311. But when the County finally opened MC311, a manager put an indefinite delay on Reyazuddin's transfer because her audio program was incompatible with MC311's customer service program, Siebel.

Reyazuddin then worked several jobs for the County that several County officials described as insufficient or not meaningful. At first, she answered intermittent calls and processed food assistance referrals. Then the department let her choose between a full-time job in childcare resources and referral or a part-time job in aging and disability.

_____

[1] For further background, see this court's opinion in Reyazuddin's first appeal. *Reyazuddin v. Montgomery County (Reyazuddin I)*, 789 F.3d 407, 410–13 (4th Cir. 2015).

Reyazuddin chose the part-time job. But she still wanted to work at MC311 as a Customer Service Representative II ("CSR II"). CSR IIs typically answer both ordinary customer service calls ("Tier I calls") and calls that require specialized knowledge or databases ("Tier II calls").

Believing the County discriminated against her based on disability when it refused to transfer her to MC311 as a CSR II, Reyazuddin sued the County under the Rehabilitation Act and Title II of the Americans with Disabilities Act ("ADA"). The district court granted the County summary judgment on all claims. This court affirmed on the ADA Title II claim but remanded the Rehabilitation Act claims for trial. A few months before trial, the County offered Reyazuddin a job at the Columbia Lighthouse for the Blind, which she declined.

When the trial concluded, the jury found that the County failed to accommodate Reyazuddin's disability, rejecting the County's undue burden defense. The jury found that Reyazuddin could perform all essential functions of a CSR II at MC311. But it awarded Reyazuddin $0 in damages. After the jury verdict, the district court considered Reyazuddin's demands for equitable relief.

Before the district court heard evidence, the County transferred Reyazuddin to MC311 as a CSR II. She maintained her salary and benefits and got seniority at MC311 dating back to 2009. She received extensive training, but Siebel remained inaccessible.

At MC311, Reyazuddin answered calls through a landline instead of through Siebel's interface. She couldn't check or set her "aux" code, which displayed her availability for calls. She accessed internal articles on a spreadsheet instead of on Siebel.

4

And she had to use the external portal on MC311's public site instead of the internal portal on Siebel. On the public site she had to pass a test (which gave her trouble) to prove she was a human user. And she couldn't use digital maps maintained on Siebel.

But the County worked to improve the accessibility problems. Before the bench trial, the County developed the Internal Web Accommodation Application ("IWAA"), an alternative to Siebel. Reyazuddin can access it without having to pass a test. Through IWAA, Reyazuddin can now access all internal articles and instructions. During the bench trial, the County discovered and fixed the problem with Reyazuddin's aux code.

Some differences remain. CSR IIs normally take both Tier I and Tier II calls. While Reyazuddin temporarily handled Tier I calls, she found the volume of calls overwhelming and now she only takes Tier II calls. Because she can't access Siebel, Reyazuddin doesn't receive partially completed service requests when a CSR I forwards her a call. Instead, she must start a new service request. Unlike other CSR IIs, Reyazuddin must submit her service requests before hanging up, so she can't edit them after the call. Nor can she directly do quality review on her requests. Instead, she must email suggestions to her supervisor, who can enter corrections. Reyazuddin can access only two of about twelve digital maps. And without access to Siebel, she can't work remotely during inclement weather. The County could solve many of these problems by upgrading Siebel. But while the County has a contract with Siebel's developer to upgrade the system, it hasn't identified when it will complete it.

Nonetheless, the district court held that the County had reasonably accommodated Reyazuddin. It found that she could perform to the same level as her coworkers and

5

faced no barriers to advancement. The court denied Reyazuddin all equitable relief because it considered the discrimination isolated and unlikely to recur.

Reyazuddin now appeals, contending that the district court erred in finding reasonable accommodation and erred by denying injunctive and declaratory relief.

II.

Reyazuddin first contends that the district court erred in finding that the County reasonably accommodated her at MC311. The Rehabilitation Act requires the County to accommodate Reyazuddin if she can perform a job's essential functions. *See* 29 U.S.C. § 794; *Reyazuddin I*, 789 F.3d at 409. When the district court determined the essential functions of a CSR II and found reasonable accommodation, it made findings of fact. *See Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994). We review these findings of fact for clear error and will not reverse a finding if it "is plausible in light of the record viewed in its entirety." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 196 (4th Cir. 2009) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985)).

The Rehabilitation Act requires reasonable accommodations unless it would be an undue burden. *See* 42 U.S.C. § 12112; 29 C.F.R. § 1630.9.[2] Reasonable accommodations must enable an employee with a disability to perform essential job functions and to enjoy equal job privileges. *See* 29 C.F.R. § 1630.2(*o*). Essential

---

[2] We cite authorities for both the Rehabilitation Act and the ADA, which contain identical standards regarding the issues in this case. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 & n.17 (4th Cir. 2005).

functions are "the fundamental job duties" of a position. *Id.* § 1630.2(n)(1). To determine whether a function is essential, we consider the employer's judgment, written job descriptions, and other defined factors. 29 C.F.R. § 1630.2(n)(3); 42 U.S.C. § 12111(8); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 579 (4th Cir. 2015).

Reasonable accommodations can include reallocating marginal functions to another employee. *See* 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(*o*)(2)(ii); *Benson v. Nw. Airlines, Inc.*, 62 F.3d 1108, 1112–13 (8th Cir. 1995). And while an "employer never has to reallocate essential functions," it may "do so if it wishes." U.S. Equal Emp. Opportunity Comm'n, No. 915.002, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (2002), https://www.eeoc.gov/policy/docs/accommodation.html#job (last visited Nov. 9, 2018) (saved as ECF opinion attachment). Beyond reallocation, an employer may change how and when an employee performs an essential function. *See* 29 C.F.R. § 1630 app. Courts should not discourage employers from going beyond the Rehabilitation Act's requirements and restructuring essential functions as accommodation. *See Phelps v. Optima Health, Inc.*, 251 F.3d 21, 26–27 (1st Cir. 2001); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1528 (11th Cir. 1977).

Reyazuddin gives three reasons why the County has not reasonably accommodated her. First, it has eliminated essential functions of her job. Second, it has limited her job performance. And third, it has denied her opportunities for advancement. All three arguments are unavailing.

First, the County's restructuring of Reyazuddin's job was a reasonable accommodation. It is true that Reyazuddin doesn't answer Tier I calls, must reenter some information after receiving a forwarded service request, and can't use most digital maps or do direct quality review. But to the extent these functions are essential,[3] the district court correctly observed that the Rehabilitation Act doesn't require that Reyazuddin perform them the same way as her coworkers.[4] Because the County's accommodations do not change her job, they are acceptable alterations to when and how Reyazuddin performs an essential function. *See* 29 C.F.R. § 1630 app.

The County restricted Reyazuddin to Tier II calls to keep her from getting overwhelmed and to focus her work on calls she is best equipped to handle. As part of an accommodation, employers may shift an employee's duties to fit their skills and capabilities. *See, e.g.*, *Bunn v. Khory Enters., Inc.*, 753 F.3d 676, 680 (7th Cir. 2014) (deploying employee to single duty station instead of rotating him between stations); *Basith v. Cook County*, 241 F.3d 919, 930, 932 (7th Cir. 2001) (moving employee to alternative shift with different duties). Moreover, the written job description doesn't require CSR IIs to answer Tier II calls from all departments or any Tier I calls at all.

---

[3] The district court was somewhat unclear on this point. *See Reyazuddin v. Montgomery County*, 279 F. Supp. 3d 462, 475–77 (D. Md. 2017).

[4] The district court relied in part on interpretive guidance regarding supported employment. *See Reyazuddin*, 279 F. Supp. 3d at 476. That guidance is inapplicable to this case, but it doesn't affect the outcome. *See* 29 C.F.R. § 1630 app. (defining supported employment); 42 U.S.C. § 15002(30) (defining supported employment services).

The Ninth Circuit case Reyazuddin cites in support is inapposite. *See Cripe v. City of San Jose*, 261 F.3d 877 (9th Cir. 2001). First, it concerned different issues: whether the plaintiffs could perform essential job functions and whether the employer unlawfully segregated them. *Id.* at 888–90. And second, the *Cripe* employer forced disabled employees into a distinct job with no meaningful employment opportunities. *See id.* at 882–83. In contrast, Reyazuddin performs the same job as her peers—answering customer service calls. She just performs it differently.

Second, the County hasn't limited Reyazuddin's job performance. Her employment opportunities are meaningfully equal to those of her peers. All CSR IIs receive Tier II calls from some departments and not others. And the fact that (at least for now) Reyazuddin doesn't receive Tier I calls hardly limits her performance: she still has many Tier II calls to answer. The technical alterations made by the County, such as not receiving forwarded service requests, do not change her overall performance. And the accommodations haven't affected Reyazuddin's salary or benefits. True, Reyazuddin can't telework during inclement weather. But teleworking is at the County's discretion: no employee has a right to it.[5] And when an employee can't reach the office, teleworking is for the County's benefit, not the employee's. So the inability to telework doesn't limit Reyazuddin's employment opportunities.

---

[5] The fact that Reyazuddin can't currently telework because she is on a Work Improvement Plan is irrelevant. The question is whether the County would have to provide teleworking accommodations if she were otherwise eligible.

9

Third, the County has not denied Reyazuddin any opportunity for advancement. The requirements to advance are minimal. To advance to CSR Supervisor, an employee only needs four years of customer service experience with the County (at least two as a CSR II) and familiarity with the systems in MC311. Reyazuddin can be promoted if she does well in her duties and develops supervisory skills. Unlike in *Cripe*, the County hasn't imposed a functional bar on advancement for disabled employees. *See* 261 F.3d at 882, 894. And while Reyazuddin contends that the County requires a vision test for promotion to CSR II, County regulations say otherwise. *See* Montgomery County, Md., Reg. § 33.07.01.08-6(b)(2)(B)(i)–(ii).

The district court did not err in finding reasonable accommodation.[6]

### III.

Reyazuddin next contends that the district court erred by denying her injunctive relief. Reyazuddin asked for two injunctions. First, she requested a mandatory injunction requiring the County to assign her Tier I calls and make Siebel and the digital maps accessible. Second, she requested a prohibitory injunction forbidding the County from discriminating against her again.

---

[6] The County also argues that it made a reasonable accommodation when it offered to move Reyazuddin to Columbia Lighthouse for the Blind. Given our disposition, we (like the district court) need not address this argument. *See Reyazuddin*, 279 F. Supp. 3d at 477 n.5.

We review a district court's denial of an injunction for abuse of discretion. *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502 (4th Cir. 2016). Reyazuddin contends that the district court erred in two ways. First, Reyazuddin says the district court lacked discretion to deny injunctive relief because the jury found that the County had discriminated against her. Second, even if the district court had discretion, it abused it here because the County systematically discriminated against Reyazuddin and would not accommodate her without litigation. We reject both arguments.

Regarding the first argument, a district court generally has broad discretion to fashion a remedy that will "eliminate past discrimination and bar discrimination in the future." *United States v. County of Fairfax*, 629 F.2d 932, 941 (4th Cir. 1980); *see also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). Seeking to cabin that discretion, Reyazuddin relies on a statement from this court that "when a plaintiff has prevailed and established the defendant's liability under Title VII, there is no discretion to deny injunctive relief completely." *United States v. Gregory*, 871 F.2d 1239, 1246 (4th Cir. 1989).

While phrased in absolute terms, we do not believe *Gregory* intended to eliminate a district court's discretion in granting equitable relief.[7] We note that our decision cited Supreme Court and circuit precedents that don't require injunctions in all civil rights cases. *See id.* (citing *Albemarle Paper*, 422 U.S. at 418; *County of Fairfax*, 629 F.2d at

---

[7] Reyazuddin also relies on *King v. McMillan*, 594 F.3d 301, 310 (4th Cir. 2010). But *King* cites *Gregory* for an unrelated proposition, and *King*'s holding has no bearing on this case.

941–42). Moreover, this court has affirmed the denial of injunctions in other civil rights cases. *See Spencer v. Gen. Elec. Co.*, 894 F.2d 651, 660 (4th Cir. 1990), *abrogated on other grounds by Farrar v. Hobby*, 506 U.S. 103, 108 n.2 (1992). In short, we've not limited district courts' discretion to fashion remedies in civil rights cases, and we decline to do so now.[8]

Nor do we believe that the district court abused its discretion here. An injunction is proper if "there exists some cognizable danger of recurrent violation." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). In a discrimination case, an injunction is most appropriate when the employer has failed to adequately remedy the discrimination and prevent its recurrence. *See Gregory*, 871 F.2d at 1247; *County of Fairfax*, 629 F.2d at 941. If the discrimination is unlikely to recur, we "should defer to the lower court's choice in crafting appropriate relief." *Spencer*, 894 F.2d at 660.

In this case, the County has acted in good faith to remedy past discrimination and prevent its recurrence. As a result, a mandatory injunction requiring further accommodation is unnecessary.[9] And a prohibitory injunction would serve little purpose. The County never denied that it had to accommodate Reyazuddin; it only disputed the method. The County made several accommodations without a court order. It offered

---

[8] Given our holding, the parties' dispute over whether Reyazuddin "prevailed" in the district court is irrelevant.

[9] Of course, the County can voluntarily make further accommodations, such as upgrading Siebel to make it accessible. But on this record, the County's current accommodations are sufficient.

12

Reyazuddin a new job before the jury trial, moved her to MC311 and spent money and time on accommodations before the bench trial, and fixed the aux code problem during the bench trial. And the discrimination related to a one-time event—the organization of MC311. It is unlikely to recur. Finally, while the problem was less isolated than in *Spencer*, it lacked the systematic and persistent quality found in *Gregory* and *County of Fairfax*.

The district court acted well within its discretion in declining to enter an injunction.


IV.

Reyazuddin contends last that the district court erred by denying her declaratory relief. She sought a declaration—based on the jury verdict—that the County discriminated against her. A district court should issue a declaration when it will help in "clarifying and settling" legal relationships and will "terminate and afford relief from the uncertainty, insecurity, and controversy" driving the suit. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). We review the denial of a declaration for abuse of discretion. *See id.* at 421.

The jury found that the County discriminated by refusing to transfer Reyazuddin to MC311. That verdict now has limited relevance because the County has accommodated Reyazuddin. Expounding on it would be superfluous as it would "neither clarify any issue of law . . . nor provide relief from uncertainty." *Pitrolo v. County of*

13

*Buncombe*, 589 F. App'x 619, 621 (4th Cir. 2014). The district court thus did not abuse its discretion in denying this form of equitable relief.

V.

The district court did not err in finding that Montgomery County reasonably accommodated Reyazuddin. Nor did it abuse its discretion by denying her injunctive and declaratory relief. Accordingly, the district court's judgment is affirmed.

*AFFIRMED*