In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-2561

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

VICKIE L. SANDERS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 17-cr-40043 — **J. Phil Gilbert**, *Judge.*

ARGUED FEBRUARY 10, 2021 — DECIDED MARCH 24, 2021

Before MANION, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* When COVID-19 and Legionnaires'
disease began spreading in Vickie Sanders's correctional fa-
cility—where she is serving a sentence for offenses related to
manufacturing methamphetamine—she became nervous
about her own health. Sanders suffers from numerous medi-
cal conditions, many of which put her at higher risk of serious
illness from those diseases.

Represented by counsel, she petitioned the district court for compassionate release under 18 U.S.C. § 3582(c)(1)(A) in light of the outbreaks and her particular susceptibility. But after the government submitted new medical records that Sanders was foreclosed from addressing, the court denied her relief. It found that, although Sanders suffers from medical conditions that place her at greater risk of serious illness, her criminal history and the court's finding that home confinement would be unsuitable (a methamphetamine lab was found in her kitchen) weighed against sentence modification.

Because the district court did not abuse its discretion or deny Sanders due process, we affirm.

## I. BACKGROUND

In 2017, a grand jury charged Vickie Sanders with conspiracy to manufacture fifty grams or more of methamphetamine (Count 1), attempt to manufacture methamphetamine (Count 2), and possession of pseudoephedrine knowing that it would be used to manufacture methamphetamine (Counts 3–6). She pled guilty to all six counts.

In May 2018, the district court sentenced Sanders to 120 months' imprisonment on Count 1 and 87 months' imprisonment on Counts 2 through 6, to run concurrently. The sentence also included eight years of supervised release, a $300 fine, and a $600 special assessment. We affirmed her convictions and sentence on direct appeal. *United States v. Sanders*, 909 F.3d 895 (7th Cir. 2018).

Sanders is currently serving her sentence at Federal Correctional Institution Coleman Low in Florida. In 2020, FCI

Coleman Low experienced outbreaks of Legionnaires' disease[1] and COVID-19.

On July 10, 2020, just over two years into her ten-year sentence, Sanders filed an "Emergency Motion for Compassionate Release" under 18 U.S.C. § 3582(c)(1)(A). She requested immediate release in light of the COVID-19 pandemic, the outbreaks of COVID-19 and Legionnaires' at FCI Coleman Low, and her particular susceptibility. In her motion, Sanders listed her numerous medical conditions, including several that put her at increased risk of serious illness if she is infected by COVID-19 or Legionnaires'. Such conditions included cardio obstructive pulmonary disease (COPD), asthma, obesity, and Type II diabetes. She also noted that her age (59 years old) and status as a former heavy smoker increased her risk.[2]

On July 14, 2020, the district court entered a scheduling order that required the government to respond to Sanders's

---

[1] The Centers for Disease Control and Prevention (CDC) explains that "[p]eople can get Legionnaires' disease … when they breathe in small droplets of water in the air that contain the bacteria [legionella]." *Legionella (Legionnaires' Disease and Pontiac Fever): Causes, How it Spreads, and People at Increased Risk*, Centers for Disease Control & Prevention, https://www.cdc.gov/legionella/about/causes-transmission.html (last visited Mar. 17, 2020). "Legionella is a type of bacterium found naturally in freshwater environments," and "can become a health concern when it grows and spreads in human-made building water systems." *Id.*

[2] Other conditions that she listed include: hypertension, hyperlipidemia, peripheral artery disease, chronic viral hepatitis C, anemia, sleep apnea, vitamin D deficiency, varicose veins, lumbar degenerative disc disease, foot pain, peripheral neuropathy, cervical dysplasia, diverticulitis, and depression.

motion within five weeks. That same day, Sanders filed a motion to expedite. The district court granted the motion.

On July 31, 2020, the government filed its response and attached new medical records, including records stating that Sanders had tested positive for COVID-19 on July 15 and that any symptoms had subsided by July 23.

On August 4, 2020, the district court entered its order denying Sanders's motion for compassionate release. After detailing her criminal history, medical history, and compassionate-release request, the court found that § 1B1.13 of the Sentencing Guidelines and the 18 U.S.C. § 3553(a) factors weighed against her release.

Sanders filed a motion for reconsideration, arguing that she should have been given the opportunity to file a reply under Southern District of Illinois Local Rule 7.1(g) and that the court erred in its analysis. The district court denied her motion, and Sanders timely appealed.

## II. ANALYSIS

Sanders argues that the district court violated its own local rules and denied her due process when it issued its order denying relief without giving her the opportunity to file a reply brief. She also argues that the court abused its discretion by failing to sufficiently consider her current medical conditions and arguments in its analysis.

*A. No Opportunity to File a Reply*

We first address Sanders's challenge to the district court's application of Southern District of Illinois Local Rule 7.1(g). District courts have "considerable discretion in interpreting and applying their local rules." *Dr. Robert L. Meinders, D.C.,*

*Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 858 (7th Cir. 2015) (quoting *Cuevas v. United States*, 317 F.3d 751, 752 (7th Cir. 2003)). "[W]e 'will intrude on that discretion only where we are convinced that the district court made a mistake.'" *Id.* (quoting *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681 (7th Cir. 2014)).

Of course, this discretion does not allow courts to apply a rule in a way that violates a litigant's due-process rights. *Id.* ("When strict adherence to local rules … threatens to deprive a litigant of the opportunity to respond, the local rules must give way to considerations of due process and fundamental fairness."). "Due process … requires that a [party] be given an opportunity to respond to an argument or evidence raised as a basis to dismiss his or her claims." *Id.* For example, in *Meinders*, we found that the blanket proscription of sur-reply briefs in Southern District of Illinois Local Rule 7.1(c) created the potential for due-process violations. But the litigant's due-process rights were not violated until "the district court's dismissal order *relied on*" new arguments and evidence. *Id.* (emphasis added); *see also United States v. Neal*, 611 F.3d 399, 402 (7th Cir. 2010) ("[The defendant] is entitled to an opportunity to contest propositions that affect how long he must spend in prison.").

Local Rule 7.1(g) provides that "[a] reply, if any, shall be filed within 7 days of the service of the response. Reply briefs are not favored and should be filed only in exceptional circumstances. The party filing the reply brief shall state the exceptional circumstances." S.D. Ill. R. 7.1(g).

Sanders argues that the government's attachment of new medical records warranted a reply. In its response brief, the government attached medical records dated after Sanders

filed her opening brief. According to the government, Sanders had already contracted COVID-19 and was "basically asymptomatic and not suffering any serious illness."

The medical records show that Sanders tested positive for COVID-19 on July 15 and, thereafter on July 21, she gave no indication of any symptoms such as fever, chills, shortness of breath (SOB), or body aches. The record further states that she did experience headache, decreased smell and taste, and an itching rash. Thereafter on July 23, a lack of any symptoms is indicated except for phlegm and a rash.

In its order of denial, the district court stated that Sanders had tested positive for COVID-19 and indicated a lack of displayed symptoms. Then, the court prohibited Sanders from exercising an opportunity to file a reply brief contesting the validity of the information contained in the order of denial.

In its order denying Sanders's motion for reconsideration, the district court addressed Local Rule 7.1(g)'s standard. The court found that Sanders had failed to describe "exceptional circumstances" that merited filing a reply and, regardless, nothing would have changed because the order denying relief was not concerned with the existence or nonexistence of symptoms. More specifically, the order stated that the court "did not rely on a finding that Sanders is asymptomatic. Rather when considering Sanders' history and characteristics, the Court balanced Sanders' severe medical conditions with her 'decades-long history of crime.'" And the face of the district court's order denying relief supports that conclusion. As described in more detail below, its analysis focused on Sanders's criminal history and other facts not in dispute.

Thus, the district court's denial of relief did not rely on new evidence, so it could not constitute "a basis to dismiss [Sanders's] claims" in violation of her due-process rights. *Meinders*, 800 F.3d at 858. For the same reason, the court did not abuse its discretion when it denied her request to file a reply for failing to identify exceptional circumstances under Local Rule 7.1(g).

*B. Denial of Compassionate Release*

We now turn to Sanders's challenge to the district court's analysis in its order denying compassionate release. We will not upset a district court's denial of a motion for compassionate release unless the court abused its "considerable discretion" under 18 U.S.C. § 3582(c)(1)(A). *United States v. Saunders*, 986 F.3d 1076, 1077 (7th Cir. 2021).

A motion brought under § 3582(c)(1)(A) allows the court to reduce a prison sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds "extraordinary and compelling reasons warrant[ing] such a reduction." 18 U.S.C. § 3582(c)(1)(A); *see also Saunders*, 986 F.3d at 1078. Here, the district court concluded that the § 3553(a) factors weighed against Sanders's release.[3]

---

[3] Section 3582(c)(1)(A) also provides that the district court may only reduce a sentence if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." But the Sentencing Commission has not updated U.S.S.G. § 1B1.13 since the First Step Act amended the statute to permit an inmate to petition the court herself. Thus, we have held that "§ 1B1.13 does not apply when the prisoner, rather than the Bureau [of Prisons], moves for compassionate release." *Saunders*, 986 F.3d at 1078 (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

The court examined the nature and circumstances of Sanders's methamphetamine offenses—for example, when she was arrested, law enforcement discovered a methamphetamine lab in her kitchen and a loaded handgun—and found that Sanders had committed "recent and deplorable offenses" that "placed the welfare of the community at risk." That factor therefore weighed against release. Then, the court determined that Sanders's history and characteristics were a neutral factor because, although her medical conditions place her at a higher risk of severe illness, her lengthy criminal history belies her argument that she is not a danger to the community. The court similarly found that the need for the sentence imposed is neutral. Finally, the court determined that the kinds of sentences available weighed against release because her offenses involving the manufacturing of methamphetamine took place in her own kitchen—a significant concern when she is requesting home confinement.

Sanders argues that the district court erred in its § 3553(a) analysis by not considering all of her arguments in its order denying relief. We disagree.

First, she contends that the court relied on out-of-date medical information because it failed to list each of her medical conditions in its analysis and that it did not acknowledge that they made her more susceptible to illness from legionella. But the court clearly identified Sanders's medical conditions, from her presentence report as well as updated medical

Although the district court incorrectly believed itself to be bound by § 1B1.13, any error is harmless because the court's weighing of the § 3553(a) factors independently supports its decision, *id.*, and Sanders conceded in her reply brief that "the district court primarily rested on a weighing of the § 3553(a) factors."

records, in the "medical history" and "compassionate release" sections of its order, and it generally referred to those conditions in its analysis. It was not required to re-list each condition to demonstrate that it adequately considered it. The same is true for its consideration of Sanders's risk of illness by legionella. And the court reiterated in its order denying Sanders's motion for reconsideration that "[a]lthough the Memorandum & Order did not make a second reference to legionella, the Court considered it then and remains of the same mind now."

Second, Sanders argues that the court should have referred to her record of discipline, program participation, and substance abuse and mental health treatment in its analysis. But "the district court need not provide a detailed, written explanation analyzing every § 3553(a) factor." *United States v. Marion*, 590 F.3d 475, 477 (7th Cir. 2009). Regardless, in its denial of Sanders's motion for reconsideration, the court expressly addressed her post-sentencing behavior, stating that "[w]hile the Court commends her achievements, the facts underlying her recent conviction suggest that she still presents a danger to the community." When issuing an order denying compassionate release, the court must "provide some statement of reasons supporting its decision." *Id.* It did so here.

Thus, the district court reasonably weighed the § 3553(a) factors and did not abuse its discretion in finding that they weighed against release.

### III. CONCLUSION

The district court did not violate Sanders's due-process rights or commit an abuse of discretion when it denied Sanders the opportunity to reply to the government's response. It

also did not abuse its discretion in denying her motion for compassionate release. We AFFIRM.