In the

# United States Court of Appeals

### For the Seventh Circuit

No. 20-2486

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES SAUNDERS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cr-00797-1 — **Andrea R. Wood**, *Judge.*

SUBMITTED FEBRUARY 5, 2021[*] — DECIDED FEBRUARY 8, 2021

Before WOOD, SCUDDER, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* James Saunders, a federal inmate serving a 5-year sentence for weapons trafficking, moved for

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

compassionate release or transfer to home confinement in light of the COVID-19 pandemic and his health problems. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Accepting that Saunders's health circumstances were extraordinary and compelling, the court nonetheless denied the motion after applying the factors of 18 U.S.C. § 3553(a). It concluded that release was unwarranted because of the seriousness of Saunders's crime and the substantial portion of his sentence remaining. Because the district court did not abuse its considerable discretion in weighing the § 3553(a) factors, we affirm.

Saunders pleaded guilty to dealing in firearms without a license, *see* 18 U.S.C. § 922(a)(1)(A), and possessing a firearm as a felon, *see* 18 U.S.C. § 922(g)(1). Saunders and his codefendants unlawfully obtained firearms in Missouri and sold them to Chicago buyers who they knew planned to use the guns illegally. These firearms included semiautomatic weapons that came equipped with or could accept large-capacity magazines. Saunders was sentenced to 5 years' imprisonment in January 2020.

Six months later, in June 2020, Saunders asked the court for compassionate release or, alternatively, to transfer him to home confinement because his health put him at serious risk from the novel coronavirus. He argued that his history of chronic bronchitis, type 2 diabetes, blood clots, a heart attack, other heart problems, diabetic neuropathy, and hypertension—combined with the COVID-19 pandemic—provided "extraordinary and compelling reasons" to release him. 18 U.S.C. § 3582(c)(1)(A)(i).

The district court denied the motion. Both the court and government stipulated that Saunders's health circumstances were extraordinary and compelling. But in considering the

§ 3553(a) factors, the court found that those factors weighed against release for two reasons. First, it emphasized that firearms trafficking is a serious crime that fuels the ongoing gun violence in Chicago, citing a report from its mayor's office. *See* City of Chicago, Office of the Mayor, Gun Trace Report 2017 at 8, https://www.chicago.gov/content/dam/city/depts/mayor/Press%20Room/Press%20Releases/2017/October/GTR 2017.pdf ("[T]he majority of illegally used or possessed firearms recovered in Chicago are traced back to states [including Missouri] with less regulation over firearms…."). Second, it noted that Saunders had served only 19 months (including time served before sentencing) of his 60-month sentence. It concluded that releasing Saunders with two-thirds of his sentence remaining would undermine the gravity of his offense. (It also remarked that Saunders had not demonstrated that the Bureau of Prisons was unable to control the spread of COVID-19 in his facility.) The court did not address Saunders's alternate request to finish his sentence in home confinement. But, with commendable diligence, the court did respond to Saunders's serious health conditions by recommending that the Bureau of Prisons place him in a medical facility, and it has done so.

Saunders argues on appeal that the district court erred by requiring him to remain in prison. Focusing on the pandemic, he contends that he is in danger from COVID-19 even at his new facility. He points to ongoing COVID-19 cases among fellow inmates and the impossibility of maintaining social distance in prison. We review a district court's denial of compassionate release for abuse of discretion. *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir 2020).

The court did not abuse its broad discretion in finding that the § 3553(a) factors weighed against release despite the threat that Saunders faces from COVID-19. Under 18 U.S.C. § 3582(c)(1)(A), a court may release a prisoner for compassionate reasons only if, "after considering the factors set forth in section 3553(a)," it finds extraordinary and compelling reasons. Because of the importance of the § 3553(a) factors, courts are not compelled to release every prisoner with extraordinary and compelling health concerns. *See United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). And here the court reasonably weighed those factors. It emphasized that Saunders committed the serious offense of selling unlawfully obtained firearms with large-capacity magazines knowing that the buyer intended to use them unlawfully. And it permissibly ruled that excusing him from two-thirds of his sentence for this crime would not promote respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A); *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (upholding district court's denial of compassionate release based on time remaining in petitioner's sentence).

As an aside, we note that, in permissibly denying relief, the district court considered itself constrained by the Sentencing Commission's criteria for "extraordinary and compelling reasons" in U.S.S.G. § 1B1.13. Although we have since held that § 1B1.13 does not apply when the prisoner, rather than the Bureau, moves for compassionate release, *Gunn*, 980 F.3d at 1180, any error was harmless because the court found that Saunders met the criteria.

Finally, Saunders argues that the district court should have considered his alternate request for transfer to home confinement. But the court lacked authority to change

Saunders's place of imprisonment. An inmate in home confinement remains in custody of the Bureau. *United States v. Ko*, 739 F.3d 558, 561 (10th Cir 2014). The Bureau (and under the CARES Act, the Attorney General) has plenary control over its inmates' placement. *See* Coronavirus Aid, Relief, and Economic Security Act (CARES Act), § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281 (2020); *Tapia v. United States*, 564 U.S. 319, 331 (2011). A district court may only recommend a new placement; it may not order it. *Tapia*, 564 U.S. at 331; 18 U.S.C. § 3621(b)(4)(B). Thus, the district court did not err by declining to review the merits of a request that it had no power to grant.

The judgment of the district court is thus AFFIRMED.