NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted February 23, 2021[*]
Decided April 30, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 20-2683

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 10-cr-30046 |
| GIOVONNI THOMAS, *Defendant-Appellant*. | Richard Mills, *Judge*. |

**O R D E R**

Giovonni Thomas, an inmate at the Federal Correctional Institution in Elkton, Ohio (FCI Elkton), moved for compassionate release under the First Step Act. *See* 18 U.S.C. § 3582(c)(1)(A). On appeal he argues that FCI Elkton was unable to control a COVID-19 outbreak last year, and because he carries the sickle-cell gene, he is

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

particularly vulnerable to the virus. He also argues that he would be subject to a lower sentence today than when he was originally sentenced. Because the district court adequately assessed these concerns and reasonably found that Thomas did not qualify for release, we affirm.

Thomas pleaded guilty to possessing cocaine with intent to distribute, 21 U.S.C. § 841(b)(1)(C); possessing a firearm to further that crime, 18 U.S.C. § 924(c); and possessing a firearm as a felon, 18 U.S.C. § 922(g). In 2011, Thomas was sentenced to a prison term of 192 months, followed by a five-year term of supervised release. Thomas is scheduled for release in 2024.

Last year, after exhausting his administrative remedies, Thomas asked for compassionate release. Thomas filed a motion pro se, and his motion was later supplemented after the court appointed counsel for him. The district court then terminated his pro se motion but considered his supplemental filing, which raised two issues relating to the COVID-19 pandemic. First, Thomas cited, and the court accepted, information about FCI Elkton's COVID-19 infection rates. At the time of Thomas's supplemental motion, 240 inmates and seven staff members had active cases. Cumulatively, 815 of FCI Elkton's 2,247 inmates had tested positive, and nine inmates had died of the virus. By the time the court ruled on Thomas's motion, the cumulative number of inmate cases had increased to 982. Based on conditions like these, the U.S. Attorney General issued a memo declaring an emergency at the Bureau of Prisons (BOP) and allowing the BOP Director to consider transferring inmates to home confinement. *See* Office of Att'y Gen., Memorandum for Director of Bureau of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download. Despite this memo, Thomas argued that FCI Elkton administrators were not transferring medically vulnerable inmates to home confinement.

Second, Thomas cited personal health information. Thomas argued that he has the gene for sickle cell anemia and once had the disease itself. The Centers for Disease Control (CDC), he said, has found that persons with the disease are especially vulnerable to COVID-19. The government responded that Thomas does not currently have the disease, just the sickle cell trait, which Thomas conceded the CDC does not list as a risk factor for the virus. The medical literature that the government cited explained that the disease and the trait are not synonymous and that people with the trait typically live normal lives. Thomas replied with other evidence suggesting that, independent of the virus, those with the trait are susceptible to sudden respiratory

problems. Because COVID-19 affects respiration, Thomas contended that he remains vulnerable.

In addition to these pandemic-related arguments, Thomas raised that he would no longer be incarcerated if he were sentenced after the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), which altered who qualifies for a career offender designation. Therefore, as part of his compassionate release motion, Thomas urged the district court to consider that because he would not be designated a career offender if sentenced today under *Johnson*, he would now be subject to a lower guidelines range than the one he originally faced when sentenced in 2011.

The district court denied Thomas's motion. It correctly noted that under § 3582(c)(1)(A), a court may reduce a sentence for "extraordinary and compelling" reasons. But, in rejecting Thomas's pandemic-related arguments, it observed that "the mere existence of COVID-19 in society and possibility that it may spread to a particular prison alone cannot independently justify compassionate release." It focused on whether the prison at which the movant is held is experiencing an outbreak, whether the prison is unable to control it, and whether the movant is susceptible to the virus. And for Thomas, the district court acknowledged that FCI Elkton had an outbreak that was not well controlled, but Thomas did not face heightened susceptibility from it. People like Thomas "with sickle cell trait can experience serious health issues," the court said, but "most … live normal lives and experience no symptoms," which "appear[ed] to be the case with the Defendant."

The court likewise rejected Thomas's sentencing-disparity argument. In doing so, the court expressed it was "mindful that, under the Sentencing Guidelines now in effect, the Defendant would have faced a lower guideline range and would very likely be out of prison by now." The court noted that when Thomas was sentenced, his guidelines range was 262 to 327 months, but if he were sentenced today without the career offender designation that applied at the time, his range would be 160 to 185 months. Nevertheless, the court did not consider this "so 'extraordinary and compelling' as to warrant compassionate release."

On appeal, Thomas argues that the district court did not adequately consider his arguments for compassionate release. We review the court's decision for an abuse of discretion. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021). We grant deference when it reasonably addressed the arguments for why the defendant satisfies § 3582(c)(1)(A)'s standard of "extraordinary and compelling." *See United States v.*

*Vasquez-Abarca*, 946 F.3d 990, 993 (7th Cir. 2020) (citing *Rita v. United States*, 551 U.S. 338, 356 (2007)).

The district court did not abuse its discretion in denying Thomas's motion. The district court permissibly exercised its discretion to assess Thomas's circumstances holistically, considering both whether FCI Elkton faced an uncontrolled outbreak and whether Thomas personally faced an elevated individualized risk of complications. The court reasonably concluded that Thomas failed to establish that his particular health trait—his sickle cell gene—was an extraordinary and compelling reason to justify relief. Thomas conceded that this trait is not one that the CDC says raises his risk of serious complications from COVID-19. The district court thus permissibly concluded that, despite the outbreak, Thomas was not eligible for release.

Thomas replies that we should vacate the ruling because the court wrongly thought that, at the time of the ruling, COVID-19 infections at FCI Elkton had dropped significantly. We disagree for two reasons. First, although the court did note in its ruling a recent drop in cases, it based this observation on data from the BOP's website, which indicated that only two inmates and two staff members were infected at the time. Thomas gives no persuasive reason to believe that the website was wrong, and Thomas notably cited data from the same website in support of his motion. Second, even if we assume there was some data error when the court reviewed the website, any error would have been inconsequential. The district court accepted that, during Thomas's briefing on the motion, the outbreak was serious and uncontained. Indeed, the court remarked that FCI Elkton experienced "perhaps one of the worst outbreaks of any BOP institution" and that "over the course of at least two months, FCI Elkton was unable to successfully contain the outbreak." Yet it denied the motion anyway—because Thomas was not especially vulnerable to serious illness from the outbreak.

Thomas also appears to argue that the district court incorrectly determined that his post-*Johnson* sentence disparity was not an extraordinary and compelling reason for release. The court agreed with Thomas that "the change in law [was] a factor the Court [could] consider for purposes of the motion" as part of the totality of circumstances Thomas raised, but it nonetheless concluded Thomas's sentence disparity did not justify compassionate release. We cannot say this was error. As Thomas himself recognized, *Johnson*'s changes to the career offender definition were not made retroactive to previously sentenced defendants like Thomas, and therefore, the district court was not required to grant Thomas's motion based on *Johnson*. *Cf. United States v. Fisher*, 840 F. App'x 881, 883 (7th Cir. 2021).

Lastly, Thomas argues that the district court should have considered the arguments in his initial pro se motion, namely, that his continued imprisonment is inconsistent with the 18 U.S.C. § 3553(a) sentencing factors because his successful rehabilitation while in prison justifies releasing him to home confinement. Like Thomas, we are not convinced that the district court considered his pro se motion. On the one hand, the district court terminated that motion and stated that only Thomas's supplemental motion filed by counsel was before it. On the other hand, the supplemental motion the court considered noted that Thomas's pro se motion was "sufficiently detailed and, therefore, incorporated and supplemented herein." Regardless, even if the district court erred in failing to independently consider Thomas's pro se motion, such error would be harmless. Not only was information about Thomas's rehabilitation included in the exhibit Thomas's counsel attached to the supplemental motion, but the district court was not required to conduct the § 3553(a) inquiry and consider Thomas's rehabilitation when it made clear that Thomas had not met the condition precedent of establishing that extraordinary and compelling reasons warranted his release. *See United States v. Carter*, No. 20-2409, 2021 WL 1311169, at *1 (7th Cir. Apr. 8, 2021); *United States v. Young*, 834 F. App'x 268, 270 (7th Cir. 2021). In any event, the district court lacked authority to change Thomas's place of imprisonment to home confinement; that decision rests exclusively with the BOP. *See Saunders*, 986 F.3d at 1078 (district court does not err by declining to review the merits of a request that it has no power to grant).

We note that in its decision, the district court cited the Sentencing Commission's policy statement and Application Notes in U.S.S.G. § 1B1.13. To the extent Thomas argues this was inappropriate based on our decision in *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), his argument fails because the district court did not consider itself constrained by § 1B1.13. It merely explained that although § 1B1.13 has not been updated to reflect that inmates may now move for compassionate release on their own, courts have still turned to § 1B1.13 for "guidance" despite the lack of an applicable policy statement since the First Step Act's passage. Nothing about this is inconsistent with *Gunn*. The Sentencing Commission's analysis in § 1B1.13 and its Application Notes may continue to inform the district court's discretion "without being conclusive." *See Gunn*, 980 F.3d at 1180. Moreover, the district court agreed with Thomas that it had the authority to consider the worsening global pandemic combined with the other circumstances Thomas raised—circumstances not expressly identified in § 1B1.13—in deciding Thomas's motion. The district court properly used its own discretion to determine whether "extraordinary and compelling" reasons existed in Thomas's case.

As a final matter, after the district court issued its decision and Thomas filed a notice of appeal, Thomas filed multiple motions for reconsideration in the district court. The district court correctly refrained from ruling on Thomas's reconsideration motions. *See Blue Cross & Blue Shield Ass'n v. Am. Express Co.*, 467 F.3d 634, 637 (7th Cir. 2006) (a timely notice of appeal "deprives the district court of jurisdiction over the issues presented on the appeal"). On appeal, Thomas asks us to consider the newly discovered material cited in these motions—including, among other things, that his alleged obesity places him at an increased risk of COVID-19 complications. We decline to do so. It is well established that we cannot consider new information for the first time on appeal. *See United States v. McDonald*, 981 F.3d 579, 581 (7th Cir. 2020).

AFFIRMED