In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-2893

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID L. NEWTON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:08-cr-00875-1 — **Elaine E. Bucklo**, *Judge*.

ARGUED MARCH 2, 2021 — DECIDED MAY 4, 2021

Before RIPPLE, HAMILTON, and KIRSCH, *Circuit Judges*.

RIPPLE, *Circuit Judge*. David Newton, an inmate at FCI Sea-goville in Texas, moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). He seeks a reduced sentence of time served because of the COVID-19 pandemic. He submitted that the combination of his asthma, hypertension, and use of a corticosteroid heightened his risk of serious consequences should he become infected. The district court denied the mo-tion; it concluded that Mr. Newton failed to establish the

"extraordinary and compelling reasons" required under the compassionate release statute. Because the district court did not address adequately Mr. Newton's arguments, we vacate the court's judgment and remand the case for further proceedings.

# I

## BACKGROUND

Mr. Newton has been in prison since 2009, when he pleaded guilty to two counts of bank robbery, 18 U.S.C. § 2113(a), and one count of possessing and discharging a firearm during a bank robbery, 18 U.S.C. § 924(c)(1)(A)(iii). The district court sentenced Mr. Newton to a total of 220 months' imprisonment and five years' supervised release.

In late March and early April 2020, the novel coronavirus that causes COVID-19 spread rapidly throughout the United States. Prisons, with their close quarters and communal living, were hit hard by the virus. In May 2020, after serving nearly twelve years of his sentence, Mr. Newton moved pro se for compassionate release. He first argued that his asthma, combined with the Bureau of Prison's mismanagement of the pandemic, constituted an extraordinary and compelling reason for his release under 18 U.S.C. § 3582(c)(1)(A)(i). He added a second ground a month later: that his prolonged use of a corticosteroid to treat his asthma weakens his immune system, thereby putting him at even greater risk of COVID-19.

In another filing, Mr. Newton provided a detailed release plan. In it, he explained that, if released, he could reside with either his grandmother and uncle at the home they share or with his father and his father's wife at their home.

Mr. Newton provided the addresses for both residences, which are in Chicago, as well as contact information for his grandmother, uncle, and father. He also detailed how he could, in his view, safely travel from Texas to Chicago, and provided contact information for family members who offered to assist him in making the trip.

The district court appointed counsel to represent Mr. Newton. Counsel replied to the Government's opposition to the first two medical conditions, and then added that a third condition, hypertension, in combination with the other two conditions also increased Mr. Newton's risk of illness if he remained imprisoned.

The parties disagreed as to whether the Bureau of Prisons ("BOP") and FCI Seagoville were responding inadequately to the pandemic. In July 2020, Newton contracted COVID-19. Three weeks later, a prison physician noted that his infection had "resolved" and that he "did not have a severe illness requiring hospitalization."[1] Mr. Newton still reported, however, "recurrent intermittent coughs, headaches, and asthma flare-ups for which he [had] to use inhalers more frequently."[2] The number of active cases at the prison has shrunk more recently. When the district court ruled on Newton's motion, the number of active cases among inmates stood at five.[3]

In sum, by the time Mr. Newton's motion was fully briefed, the record before the district court included:

---

[1] R.136 at 4.

[2] *Id.* at 2.

[3] R.145 at 3.

up-to-date BOP medical records detailing his asthma, prolonged corticosteroid use, and hypertension; letters from Mr. Newton and other inmates in FCI Seagoville outlining the living conditions and COVID-19 precautions, or alleged lack thereof, at the facility; data on the number of cumulative and active COVID-19 infections at FCI Seagoville; and a comprehensive release plan from Mr. Newton. It was not an overly voluminous record, but it was meaningfully informative on the key facts the district court needed to know.

After determining that Mr. Newton had exhausted his administrative remedies, the district court denied his request for release. The entirety of the district court's discussion of the merits of Mr. Newton's motion is as follows:

> The Government contends, however, that Mr. Newton has not demonstrated extraordinary and compelling reasons to warrant a sentence reduction.
>
> I agree. Mr. Newton argues that he is at particular risk of harm from COVID-19 while incarcerated due to underlying medical conditions such as asthma and hypertension, and due to his use of immunosuppressant medication. The CDC, however, while acknowledging that these conditions "might" create an increased risk of harm from COVID-19, has not been able to determine conclusively that they pose an increased danger. Indeed, Mr. Newton did contract COVID-19 in July 2020, and the infection seems to have "[r]esolved" without serious incident. R. 136 at 2. Moreover, although Mr. Newton reports substantial spread of

> COVID-19 in FCI Seagoville, where he is
> housed, the prison has lately succeeded in dras-
> tically reducing active cases of COVID-19
> within its population; currently, it reports only
> 5 inmate cases. Accordingly, it is not clear that
> Mr. Newton would face a significantly reduced
> risk from COVID-19 in the general population
> than he would in prison.[4]

The district court included two footnotes: one to a CDC web-
site with a list of conditions that place individuals at risk of
severe illness from COVID-19, and the other to a BOP website
with information on coronavirus cases in BOP facilities. As
the quoted portion of the opinion shows, the district court's
merits analysis included a single citation to the record.

## II

## DISCUSSION

Once an inmate fulfills the exhaustion requirements, a fed-
eral court may grant a prisoner's motion for compassionate
release if "extraordinary and compelling reasons" warrant re-
lease and if the request is consistent with the sentencing con-
siderations reflected in 18 U.S.C. § 3553(a). 18 U.S.C.
§ 3582(c)(1)(A). We previously have held that
§ 3582(c)(1)(A)'s exhaustion requirement is an affirmative de-
fense for the Government to raise. *United States v. Gunn*, 980
F.3d 1178, 1179 (7th Cir. 2020). Although it has appeared only
in nonprecedential opinions until now, we have also said that
the movant bears the burden of establishing "extraordinary
and compelling reasons" that warrant a sentence reduction.

---

[4] *Id.* at 2–3 (alteration in original) (footnotes omitted).

*See United States v. Melgarejo*, 830 F. App'x 776, 778 (7th Cir. 2020). And a district court has discretion to determine whether the movant has established "extraordinary and compelling reasons." *See Gunn*, 980 F.3d at 1180. Newton argues that the district court abused its discretion and that its order denying release must therefore be vacated.

Newton first submits that the district court wrongly believed that the policy statement found in U.S.S.G. § 1B1.13 constrained its discretion. Under § 3582(c)(1)(A), there are two ways a compassionate release motion may come before the district court: upon motion from the Director of the BOP or upon motion brought directly by the inmate after exhausting administrative requirements (the latter form of motion stems from relatively recent amendments to the statute). When Mr. Newton brought his motion in the district court, we had not yet decided whether § 1B1.13 applies to compassionate release motions brought directly by the inmate. The applicability of § 1B1.13 potentially matters for inmates like Mr. Newton because that policy statement defines "extraordinary and compelling reasons" to very limited circumstances and only permits the BOP director to determine whether compassionate release is appropriate beyond those limited circumstances. *See Gunn*, 980 F.3d at 1180. While appellate briefing was underway in Mr. Newton's case, we held that § 1B1.13 does not apply to motions like his. *See id.* During the district court litigation, the Government partly had relied upon the constraints in § 1B1.13 to argue that Mr. Newton failed to establish "extraordinary and compelling reasons" for release. There is no indication, however, that the district court misapprehended the scope of the policy statement. It never mentioned the policy statement or its language in its ruling.

We therefore cannot say that the district court erroneously applied this policy statement to Mr. Newton.

Mr. Newton submits that each of the grounds proffered in support of his motion is independently sufficient to justify his release. He also submits, however, that the district court abused its discretion by not taking into consideration the cumulative effect of his comorbidities.

The district court first denied the petition because it believed that, according to CDC guidance, each of Mr. Newton's medical conditions only "might" increase the risk posed by COVID-19. We think that the district court required the word "might" to do too much work. Assessing the effect of comorbidities necessarily involves an estimation of probabilities, not certainties, and, in the case of a novel disease, we cannot expect more from the medical profession. The CDC necessarily must deal with the present state of scientific knowledge and the courts must apply the statutory criteria in light of that reality. We cannot demand certainty where there is no certainty.[5]

We also believe that the district court should have assessed Mr. Newton's situation not only in light of each of his

---

[5] The dissent cites our nonprecedential order in *United States v. Lee*, 840 F. App'x 880 (7th Cir. 2021), for the proposition that we have affirmed denial of compassionate release because an inmate's medical condition—there, asthma—was not included on the CDC's list of conditions that definitively raise one's risk of severe complications from COVID-19. But by the time we briefly mentioned the CDC guidance in *Lee*, we had already decided that the inmate forfeited reliance on asthma as a basis for compassionate release by not raising that condition in the district court. *Id.* at 881.

comorbidities individually but also cumulatively.[6] The CDC guidance that the district court relied on refers only to the risk posed by individual conditions, not combinations of conditions. We think it quite appropriate for district courts to look to the CDC guidance as a reliable source of our country's best understanding about COVID-19. At the same time, district courts must be cautious not to stretch that guidance beyond what it says. When the district court relied on CDC guidance about individual conditions to deny Mr. Newton's contention regarding his combined conditions, the court took too great of an inferential leap. *See United States v. Salyers*, 160 F.3d 1152, 1162 (7th Cir. 1998) (Courts may draw "*permissible* inferences based upon the evidence." (emphasis added)).

Our case law does not give detailed guidance on the degree to which a district court must address each argument raised in a petition for compassionate release. *See United States v. Joiner*, 988 F.3d 993, 995 n.1 (7th Cir. 2021). Nor, given the myriad of situations confronting the district

---

[6] After reviewing Mr. Newton's filings, our dissenting colleague concludes that Mr. Newton "argued his comorbidities in isolation, not in combination." We think that conclusion reads Mr. Newton's filings too narrowly. Although considering Mr. Newton's various medical conditions seriatim is an enticingly clean approach, doing so puts a neat-and-tidy framework ahead of grappling with the real basis for Mr. Newton's motion. Mr. Newton sought compassionate release because, in his view, his medical conditions placed him at an increased risk of severe illness from COVID-19. He identified the individual conditions that make up his health status, but he never presented a fiction that those conditions operated wholly independent of one another. The dissent also contends that Mr. Newton could not meet his burden of proof even if the district court considered his conditions in combination, but we think the best approach is to have the district court answer that question in the first instance on remand.

courts, should it. At a minimum, however, the district court's analysis must give us reasonable assurance that it at least considered the prisoner's principal arguments. *Accord United States v. Rosales*, 813 F.3d 634, 637 (7th Cir. 2016). Here, the district court's treatment of Mr. Newton's motion gives us no assurance that the court gave his combination of conditions any focused consideration. Mr. Newton provided extensive records documenting his multiple medical conditions, discussed those conditions all within the same section of his only counseled filing, and cited to a district court decision that granted compassionate release to a prisoner with multiple COVID-19 risk factors, all of which was adequate to apprise the district court of the nature of his argument. *See* R.143 at 3–4 ("If the Court treats *all of his conditions* as ones that might put him at increased risk, it should find him eligible." (emphasis added)) (citing *United States v. Johnson*, No. 17-cr-50051, 2020 WL 4557042, at \*2 (N.D. Ill. June 10, 2020)).

The district court also observed that Mr. Newton fell ill with COVID-19 and "recovered." This observation gives us pause. To begin, the district court simply noted Mr. Newton's prior infection and then moved on. The court never explained what probative value that fact presented. The bare nature of the reference matters because the Government took no position on the impact of Mr. Newton's having previously contracted COVID-19. Thus, we are not even able to assume that the district court was adopting the Government's position because the Government took no position. We are left to guess at how the district court weighed Mr. Newton's prior infection.

The most likely explanation for the reference is that the district court thought, without supporting evidence, that

Mr. Newton could not be reinfected or that a subsequent in-
fection would be no more severe than the first. The Govern-
ment suggests that the court was not predicting that a second
infection was impossible or could not be worse than the first;
rather, the Government posits, the court was saying that in all
likelihood reinfection would be no worse for him than for oth-
ers without his conditions. Either way, it appears likely that
the district court drew medical conclusions about the ramifi-
cations of a future infection without any supporting medical
evidence in the record. In other contexts, we have cautioned
that "[c]ommon sense can mislead; lay intuitions about med-
ical phenomena are often wrong." *Cf. Schmidt v. Sullivan*, 914
F.2d 117, 118 (7th Cir. 1990). We think that same prudence ap-
plies to compassionate release motions involving a novel vi-
rus. District courts must base factual conclusions on record
evidence; they cannot render unsupported medical opinions.
Here, it appears the district court not only made an unsup-
ported medical judgment, it overlooked the available medical
evidence—notes from Mr. Newton's physician—stating that
even after Mr. Newton's infection subsided, he nonetheless
continued to suffer from a number of serious symptoms.

The district court's final rationale was that because FCI
Seagoville had relatively few active cases at the time,
Mr. Newton would not "face a significantly reduced risk from
COVID-19 in the general population than he would in
prison."[7] This methodology was flawed; it relied on both an
illusory comparison and the wrong comparison. We say illu-
sory because the term "general population" is hardly self-de-
fining. And in any event, the "general population" is the

---

[7] R.145 at 3.

wrong comparison because Mr. Newton proposed a detailed post-release plan for risk mitigation that placed him with either his grandmother or father, locations that he argues materially differ from the "general population." In either location, Mr. Newton explained that he would live with only two other people. Mr. Newton therefore adhered to our requirement that petitioners seeking compassionate release submit individualized evidence rather than make generalized arguments about risk.[8] *See Joiner*, 988 F.3d at 996. A district court, in turn, must consider that individualized evidence. *James v. Eli*, 889 F.3d 320, 328 (7th Cir. 2018) (citing *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1159 (7th Cir. 1989)).

Our decision today represents the opposite side of the situation we addressed in *United States v. Joiner*, 988 F.3d at 995–96. There, an inmate seeking compassionate release contended that the district court committed procedural error when it failed to address an argument in his brief that relied entirely on generalized, societal-level demographic data. *Id.* We saw no procedural error. As we explained, "by relying on generalized evidence of broad societal concerns, [the inmate] did not provide the court with any basis to" connect that general argument to his specific circumstances. *Id.* at 996. The district court addressed other, individualized arguments but did not need to address the highly general arguments for us to conduct adequate appellate review. *Id.*

---

[8] The dissent engages with Mr. Newton's detailed post-release plan, and in doing so shows just how much of Mr. Newton's individualized argument the district court's opinion left unacknowledged. The evaluative process undertaken by our dissenting colleague is the responsibility of the district court because it is institutionally far more able than an appellate panel to make a comprehensive and accurate judgment.

On the other side of the coin, when an inmate like Mr. Newton presents individualized arguments along with a meaningfully detailed record, the district court's opinion must leave us assured that it considered those individualized arguments and properly exercised its discretion. The over-arching principle remains that district courts must make their thinking clear. *See United States v. Castaldi*, 743 F.3d 589, 595 (7th Cir. 2014).

Our dissenting colleague may be correct that Mr. Newton's motion does not present extraordinary and compelling reasons for release. Yet our disagreement with the dissent is straightforward: when we read the dissent, we are confident that our colleague considered Mr. Newton's individualized arguments; when we read the district court's opinion, we cannot say the same. Although we believe that the district court committed methodological error that requires a remand, our holding today in no way indicates the appropriate final resolution of this matter. After reconsideration in accordance with this opinion, the district court will render a decision on that matter in accordance with the law and the facts presented to it.

## Conclusion

The judgment of the district court is vacated, and the case is remanded for further consideration consistent with this opinion.

KIRSCH, *Circuit Judge*, dissenting. Although the district court's order is brief, it provides enough detail to convince me that the district court did not abuse its wide discretion in holding that Mr. Newton failed to meet his burden of establishing that extraordinary and compelling reasons warrant his early release. Albeit summarily, the district court sufficiently considered and permissibly rejected each of the grounds upon which Mr. Newton based his claim for early release: (1) his underlying medical conditions, (2) the BOP's mismanagement of the pandemic, and (3) his detailed release plan. Accordingly, I respectfully dissent.

### 1.

### A.

The district court's order specifically identified each of Mr. Newton's medical conditions—asthma, hypertension, and use of immunosuppressant medication—and acknowledged that pursuant to CDC guidance, these conditions "might" create an increased risk of harm from COVID-19. R.145 at 2–3. But the district court concluded that "might" does not equal extraordinary and compelling in this case. *See id.* at 3. In support of its conclusion, the district court first noted that the CDC had not conclusively determined that any of Mr. Newton's conditions posed an increased danger, and it next observed that Mr. Newton had recovered from an earlier COVID-19 infection without suffering serious medical consequences. *Id.* at 2–3. We have affirmed denial of compassionate release on these grounds. In *United States v. Lee*, 840 F. App'x 880, 881 (7th Cir. 2021), for example, we explained that the inmate's assertion of asthma did not warrant release "not only" because the inmate failed to raise asthma as a grounds for release in the district court, but because "the CDC also ha[d] not

placed asthma on its list of conditions definitively shown to increase the risk of severe illness from COVID-19." And there we found that the district court did not abuse its discretion when it determined the inmate had not presented any convincing evidence that his previous recovery from COVID-19 heightened his risk of severe illness if he were reinfected. *Id.*[1]

The majority concludes, from the district court's observation that Mr. Newton recovered from an earlier bout with COVID-19, that the district court thought that Mr. Newton "could not be reinfected or that a subsequent infection would be no more severe than the first." *Supra*, at 10. There is no support for this conclusion in the district court's order. Rather, the district court simply pointed to Mr. Newton's recovery as support for the CDC's guidance that "might" does not mean "will," as it explained that "[i]ndeed," Mr. Newton's conditions did not result in an increased danger when he contracted the virus in July 2020. R.145 at 3. The court further noted that "the infection seems to have '[r]esolved' without serious incident" based on the available medical records. *Id.* After Mr. Newton tested positive, his physician noted: "At least 10 days have passed since [Mr. Newton's] first symptoms or positive test. [Mr. Newton] is not severely immunocompromised and did not have a severe illness requiring hospitalization. [Mr. Newton] meets CDC Criteria for release from isolation and the ICD code will be resolved[.]" R.136 at 4. Had Mr. Newton suffered severe symptoms or been

---

[1] The majority notes that we issued our decision in *Lee* as a nonprecedential order. *Supra*, at 7 n.5. This is the case with most of our recent compassionate release decisions. Though we have decided dozens of compassionate release cases over the course of the pandemic, we have only issued a few as published opinions.

severely immunocompromised, he would have stayed in isolation longer. *See* R.141 at 34 ("Those inmates with severe COVID-19 symptoms requiring hospitalization or those who are severely immunocompromised can be removed from isolation status 20 days after symptom onset."). The district court's observation does not give me pause, as it does the majority. *See supra*, at 9.

B.

The majority criticizes the district court for inadequately addressing Mr. Newton's purported argument that the *combination* of his asthma, hypertension, and use of steroid medication increased his risk of serious COVID-19 illness. *Supra*, at 7–8. The district court did not address this argument for two good reasons: Mr. Newton never made it, and even if he had, he didn't submit any evidence that the combination of his medical conditions increased his risk.

First, Mr. Newton only argued his comorbidities in isolation, not in combination. The majority holds that Mr. Newton's medical records and citation to "a district court decision that granted compassionate release to a prisoner with *multiple* COVID-19 risk factors," were enough "to apprise the district court of the nature of his argument" that his medical conditions should be considered *cumulatively*. *Supra*, at 9 (emphasis added). The majority expects far too much of the district court, especially when Mr. Newton merely cited an unpublished and non-binding case in his reply brief without explanation or argument. *See* R.143 at 4 (Mr. Newton citing *United States v. Johnson*, No. 17-cr-50051, 2020 WL 4557042 (N.D. Ill. June 10, 2020)). In doing so, Mr. Newton wrote:

> If the Court treats all of his conditions as ones that might put him at increased risk, it should find him eligible. Newton's pro se motion relied on his asthma condition and his prolonged use of prescription steroids to deal with the asthma condition, both of which might put him at increased risk, according to the CDC. *See United States v. Johnson*, 2020 WL 4557042, at *2 (N.D. Ill. June 10, 2020). The government attempts to minimize Newton's asthma and his use of steroids. But his medical records indicate that his doctor recently increased his dosage of steroids to control his asthma, R. 136, at 7, which indicates a condition that is growing worse. Although one of the doctors at Seagoville indicated that Newton is not severely immunocompromised, the record does not indicate the basis for that conclusion, which demands explanation, since the CDC has warned that use of steroids can make one immunocompromised, and Newton has recently been prescribed a larger steroid dose.
>
> In addition, Newton has hypertension, which the CDC recognizes as a factor that might put him at increased risk.

R.143 at 4–5.

At most, Mr. Newton cited *Johnson* to argue that because he had more than one independent risk factor, his medical condition was extraordinary and compelling. This is not the same as Mr. Newton arguing that his multiple risk factors interacted together or affected one another in such a way that

they created a greater risk of harm than did each of his conditions alone. Indeed in *Johnson*, the district judge considered only the total number of risk factors the inmate had, but the judge never evaluated the combined or cumulative effect of those risk factors. The judge simply reasoned: "[The inmate] is nearly 56 years old and has not one but three severe risk factors. The Court agrees with the Government that [the inmate's] health history therefore presents an extraordinary and compelling circumstance." *Johnson*, 2020 WL 4557042, at *2. Thus, *Johnson* does not support the argument the majority credits Mr. Newton for making. We have held many times that the district court need not search for veiled arguments in briefs and certainly doesn't have to make arguments on behalf of (represented) defendants. *See, e.g.*, *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

Second, even if the district court was adequately apprised of the nature of the argument, Mr. Newton entirely failed to submit evidence, medical or otherwise, that the combination of his comorbidities increased his risk of serious consequences should he be infected, such that he proved extraordinary and compelling reasons for early release. For example, there is no indication in the record that Mr. Newton's hypertension made his asthma worse, or vice versa. All the record says is that he has both. I agree with the majority that, "District courts must base factual conclusions on record evidence; they cannot render unsupported medical opinions." *Supra*, at 10. It follows that when there is no record evidence upon which to draw factual conclusions, the party with the burden of proof (here, Mr. Newton) fails to meet it, and the district court need not consider the argument. *See United States v. Joiner*, 988 F.3d 993, 996 (7th Cir. 2021) (holding that the district court need not consider arguments the defendant did not

develop or support with factual foundation); *see also United States v. Price*, 840 F. App'x 884, 885 (7th Cir. 2021) (affirming district court's denial of relief where inmate did not point to "any medical evidence submitted to the district court that conclusively establishe[d] a heightened risk of complications from COVID-19").

2.

The district court addressed and explicitly rejected Mr. Newton's second argument that the BOP's mismanagement of the pandemic at FCI Seagoville was an extraordinary and compelling reason for his release. The district court pointed out that FCI Seagoville had succeeded in dramatically reducing active COVID-19 cases and was, at the time of the district court's order, down to five cases. R.145 at 3. By doing so, the district court rejected Mr. Newton's argument made in his reply brief that, "Seagoville is as hot a hotspot as one can find." R.143 at 3. Perhaps it was at one point, but when Mr. Newton filed his reply brief (four days before the court issued its order), it most certainly was not. The district court need not say more about Mr. Newton's BOP-mismanagement argument. *See, e.g., United States v. Leachman*, 837 F. App'x 411, 412 (7th Cir. 2021) (affirming district court decision where inmate's facility "had only three confirmed cases of COVID-19 as of the date of decision").

3.

Finally, the district court's comparison of Mr. Newton's release plan to the general population was neither illusory nor wrong, as the majority concludes. *See supra*, at 10–11. Mr. Newton, in his filings and in letters of support for his release, proposed that he would travel from the federal prison in

Seagoville, Texas, to Chicago (960 miles according to MapQuest) by Greyhound bus (or by train); visit with his relatives, including at least his grandmother, two children, mom, dad, and likely cousins; first work for "Handy Nates" contract construction and then perhaps drive a truck once his license was reinstated; utilize public transportation in Chicago to get around; and live with either his grandmother and uncle, or his father and father's wife. R.140 at 1; R.141 at 22–23; R.146 at 1. This is "general population." As the majority correctly observes, "[o]ur case law does not give detailed guidance on the degree to which a district court must address each argument raised in a petition for compassionate release." *Supra*, at 8. But a motion for early release pursuant to 18 U.S.C. § 3582(c)(1)(A) is not the same as a full resentencing, and I find no fault with the district court's summary comparison.

*       *       *

The district court's order was brief, but its thinking was clear—Mr. Newton did not prove extraordinary and compelling reasons for early release. I am convinced that the district court did not abuse its discretion.

I respectfully dissent.