**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 6, 2021[*]
Decided May 7, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-3154

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division. |
| *v.* | No. 2:13 CR 79 |
| JON E. LILLY, *Defendant-Appellant*. | James T. Moody, *Judge*. |

**O R D E R**

Jon Lilly, an inmate serving a 144-month sentence at the Federal Correctional Institution-Forrest City Low in Arkansas, moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), asserting that his breathing issues place him at a high risk of serious illness during the COVID-19 pandemic. The district court denied his motion,

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

concluding that he had not demonstrated extraordinary and compelling reasons for early release. Because the court did not abuse its discretion, we affirm.

In his pro se motion, Lilly asked that the district court reduce his sentence or release him to home confinement. He argued that his asthma and severe allergies increased his risk of serious complications or death if he contracted COVID-19. The unsanitary conditions and the uncontrolled spread of positive cases at his prison, Lilly added, magnified that risk. He asked the court to consider his favorable record while in prison, including his successful coursework, lack of disciplinary history, and excellent job performance.

In its response, the government opposed Lilly's early release, arguing that he had exaggerated the severity of his health issues and the extent of the COVID-19 outbreak at his prison. The government attached prison records showing that: (1) Lilly reported in 2019 that he had childhood asthma, but was "[n]o longer having symptoms" and "[d]oes not use an inhaler"; (2) his severe allergies are to penicillin and shellfish; and (3) he tested positive for COVID-19 in June 2020 (around the time he filed his motion) and remained asymptomatic until his infection resolved. In reply, Lilly countered that the prison falsified his medical records, he suffered symptoms—including lung damage— from the virus, and he is at risk of reinfection.

The district court denied Lilly's motion, concluding that he had not shown an "extraordinary and compelling reason[]" for a sentence reduction under § 3582(c)(1)(A)(i). As to Lilly's health conditions, the court determined that his prison records revealed that he had at most a mild case of asthma for which he did not use an inhaler. Further, it noted that Lilly had already contracted and recovered from COVID-19, undermining his argument that he is at an elevated risk of a severe case or death from the virus. Although Lilly insisted that he suffered lung damage from the infection, he failed to support the assertion; indeed, he also said that he had not been evaluated by medical staff. Finally, while highlighting the uncertainty around whether reinfection is likely, the court emphasized that the number of infected people at Lilly's prison had dramatically decreased since an earlier outbreak (when Lilly was infected).

On appeal, Lilly argues that the district court underestimated the severity of his breathing issues and the inadequacy of his prison's response to COVID-19—realities which, he asserts, are sufficiently extraordinary and compelling reasons for a sentence reduction. He also highlights the hypertension listed in his medical records, which he contends increases his vulnerability to COVID-19.

Our review is deferential, and the district court did not abuse its discretion by deciding that Lilly's health and the presence of COVID-19 at his prison were not extraordinary and compelling reasons for a sentence reduction. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021). The court reasonably concluded based on Lilly's prison medical records that he was generally healthy, with only a mild case of asthma and allergies that had no known relevance to COVID-19. Further, the court appropriately determined that Lilly's risk of reinfection did not compel his release because the prison had seen a massive decrease in positive cases. To the extent Lilly believes that the court relied on incomplete information about COVID-19 at his prison—given the prison's inadequate response to the worsening pandemic—the court had to base its decision on the available data "at the time of the ruling." *United States v. Howell*, 958 F.3d 589, 595 (7th Cir. 2020). Lilly denigrates the methodology underlying the prison's data, but he presented no evidence to back up his assertion that COVID-19 is more prevalent than reported.

Lilly's suggestion on appeal that his hypertension also increases his vulnerability does not change the analysis. He did not rely on this reason in the district court and so he cannot present evidence of it now. *See United States v. McDonald*, 981 F.3d 579, 581 (7th Cir. 2020). In any case, Lilly does not explain how this condition would alter the district court's conclusion that his risk of severe infection—regardless of his medical issues—did not warrant a sentence reduction because Lilly already recovered from COVID-19, and the virus is no longer rampant in the prison.

Finally, to the extent that Lilly takes issue with the district court's incorporation of language from the policy statement in U.S.S.G. § 1B1.13 into its decision, we find no error. Since the court's decision, we have clarified that the policy statement, though binding only with respect to motions brought by the Bureau of Prisons, can guide a court's discretion when addressing prisoners' motions. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). In particular, the policy statement's "substantive aspects … provide a working definition of 'extraordinary and compelling reasons.'" *Id.* The court here did not limit itself based on the policy statement, as Lilly insists, but rather used it as a guide while considering all the evidence and Lilly's arguments.

AFFIRMED