**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 10, 2021[*]
Decided June 14, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 20-3097

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 15 CR 0178 |
| LAZARICK KING, *Defendant-Appellant*. | Robert W. Gettleman, *Judge*. |

**O R D E R**

Lazarick King, a 46-year-old federal inmate in prison for tax fraud, sought compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), arguing that his obesity put him at heightened risk of serious complications from COVID-19. The district court denied his request. It reasoned that even if the risk caused by his obesity was an "extraordinary and compelling reason" for his release, the sentencing factors of

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

18 U.S.C. § 3553(a), which it must consider, weighed against his release. Because the court did not abuse its discretion, we affirm.

After serving about one-third of his 84-month sentence for aggravated identity theft, wire fraud, and mail fraud, see 18 U.S.C. §§ 1028A(a)(1), 1341, 1343, King unsuccessfully moved for compassionate release. He had pleaded guilty based on evidence that, over the course of four years, he deceived hundreds of vulnerable victims into furnishing their personal identifying information, which he used to file false tax returns and steal nearly one million dollars in tax refunds. In his motion for early release, King initially argued that two health conditions—hypertension and asthma—put him at serious risk from COVID-19. Further, he argued that his post-sentencing conduct weighed in favor of his immediate release. (Since his incarceration, he had secured prison work, acquired marketable job skills, taken educational classes, and completed drug abuse education.) That conduct, he said, combined with his low score on a risk-assessment tool, his assignment to a low-security prison, his age, and his non-violent past, showed that he would not endanger the community if released. But the district court denied King's motion. Focusing on the evidence of his health issues only, the court stated that King "failed to demonstrate that his medical conditions constitute 'extraordinary and compelling reasons'" for his release. The court invited King to file "a subsequent motion should his medical or physical condition worsen."

King timely moved the court to reconsider, adding evidence of another health condition—obesity—to which the government responded by highlighting King's criminality. King argued that his body mass index was above the threshold cited by the Centers for Disease Control and Prevention for risk of severe COVID-19 illness. The government conceded that King's obesity was an "extraordinary and compelling reason" for his release, but it still opposed his motion. It argued that King posed a danger to the community because his tax-fraud crimes, while not violent, inflicted severe economic harm on his victims and the public. It also cited King's decades-long criminal history, which included increasingly serious convictions for theft and fraud.

The district court denied the motion to reconsider. It concluded that, even if King's risk from COVID-19 was an "extraordinary and compelling reason" for release, the § 3553(a) factors weighed against it. The court cited the seriousness of King's offense—"an extensive, four-year long identity theft scheme with multiple victims"—for which King had not served even half of his prison term. It also relied on his extensive criminal history—"literally decades of fraudulent behavior." Based on these factors, the court rejected King's argument that he posed no danger to the community.

On appeal, King argues that the district court should have ordered his early release. We review denials of compassionate release for abuse of discretion. *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021). "Because of the importance of the § 3553(a) factors, courts are not compelled to release every prisoner with extraordinary and compelling health concerns." *Id.* For two reasons, the district court reasonably decided that those health concerns, even if concededly extraordinary, did not support King's release. First, it considered but permissibly rejected King's "principal arguments," see *United States v. Newton*, 996 F.3d 485, 489 (7th Cir. 2021)— that he was unlikely to reoffend. It had ample reason to conclude that, based on his decades of recidivism, see 18 U.S.C. § 3553(a)(1), his contention that he was suddenly reformed was unpersuasive. Second, the court also reasonably determined that reducing King's sentence by more than half, as he wanted, would not reflect the seriousness of his admitted crimes of cheating vulnerable taxpayers out of refunds worth nearly a million dollars. See *id.* § 3553(a)(2)(A).

King responds that the court unreasonably found him too dangerous for release because it permitted him to be released on bond before his trial and because the Federal Bureau of Prisons placed him in a low-security facility. We are unpersuaded. King cites no authority suggesting that a district court's broad discretion in compassionate-release decisions is constrained by pretrial bond or facility-placement decisions, and nothing in 18 U.S.C. § 3582(c)(1)(A)(i) supports that interpretation. Moreover, pretrial release and facility-placement decisions are fundamentally different from compassionate-release decisions, which require the court to consider whether a prisoner, who has been convicted, has received adequate punishment for his crimes.

Lastly, King argues in the alternative that he should be transferred to home confinement, but we lack the authority to fulfill his request. See *Saunders*, 986 F.3d at 1078. The Bureau has plenary control over its inmates' placements. *Id.*

AFFIRMED