In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-1963

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL SARNO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:08-cr-0115-3 — **Ronald A. Guzman**, *Judge.*

ARGUED MARCH 31, 2022 — DECIDED JUNE 21, 2022

Before MANION, HAMILTON, and BRENNAN, *Circuit Judges.*

MANION, *Circuit Judge.* Nearly halfway through a 25-year prison term, federal inmate Michael Sarno moved for compassionate release based on severe physical disabilities. The district court assumed Sarno's medical circumstances were extraordinary and compelling but nevertheless denied the motion after finding numerous factors set out in 18 U.S.C. § 3553(a) weighed strongly against a sentence reduction. Sarno contends the district court erred in weighing those

factors and failed to discuss evidence he submitted. He also contends the inability to communicate with his attorney at a critical point in proceedings prevented him from disputing certain inaccurate government assertions. Finding no reason to question the district court's judgment, we affirm.

Sarno headed a criminal enterprise operating out of northern Illinois for several years. The enterprise placed video gambling machines in local bars and restaurants in an arrangement that, contrary to the law, allowed patrons using the machines to take their winnings in cash. This illegal operation was lucrative for Sarno. When a rival organization tried to push into Sarno's territory, he sent it a warning in the form of a pipe bomb that exploded outside its headquarters. The enterprise also burglarized or robbed more than a dozen homes and jewelry stores in Illinois, Indiana, and Wisconsin and trafficked in the stolen property.

Eventually, the law caught up with Sarno. In December 2010, a jury found him guilty of conspiring to participate in racketeering activity and of conducting an illegal gambling business. *See* 18 U.S.C. §§ 1955, 1962. He was sentenced to 25 years in prison and ordered to pay nearly $1.8 million in restitution. We affirmed both the conviction and the sentence. *United States v. Volpendesto*, 746 F.3d 273 (7th Cir. 2014).

Sarno filed the motion for compassionate release at issue here in November 2020. Then 62 years old, his health had steadily deteriorated over the previous six months. Severe osteoarthritis in his left shoulder and knee prevented him from walking, bathing, dressing, or using the toilet on his own. He would frequently fall when trying to transition into and out of his wheelchair. This immobility compounded the disabling effects of several other maladies, such as respiratory disease,

obesity, hypertension, and kidney dysfunction. On multiple occasions, Sarno had to be transported to outside medical facilities for treatment of acute health problems.

The district court held two hearings and considered many submissions from the parties. A week after Sarno's last filing, it ruled on the motion. The court assumed Sarno's poor health constituted an extraordinary and compelling reason to grant compassionate release. Nevertheless, the court determined early release would be inconsistent with the § 3553(a) factors. Specifically, cutting Sarno's sentence short would deprecate the seriousness of his offenses, undermine respect for the law, ignore his extensive criminal history, and pose a danger to the public. Concluding that these factors weighed decisively against releasing him, the district court denied Sarno's motion. After the court declined to reconsider, Sarno brought this appeal.

Generally, a federal court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). But Congress has permitted early release if "extraordinary and compelling reasons warrant … a reduction" in sentence. § 3582(c)(1)(A)(i). Such a motion for compassionate release may be filed by a prisoner or by the Director of the Bureau of Prisons. *Id.* When initiated by a prisoner, the motion "involves a two-step inquiry: one, did the prisoner present an extraordinary and compelling reason for release, and two, is release appropriate under § 3553(a)." *United States v. Kurzynowski*, 17 F.4th 756, 759 (7th Cir. 2021). We review the original denial of a compassionate-release motion, as well as the denial of a motion to reconsider, for abuse of discretion. *Id.*; *O'Donnell v. Saul*, 983 F.3d 950, 954 (7th Cir. 2020).

As the district court explained, the record amply supports denial of Sarno's motion for a sentence reduction. The factors the court cited—seriousness of the crime, respect for the law, criminal history, danger to the public—are all considerations under § 3553(a) that militate against a defendant's early release from prison.

Sarno criticizes the court's assessment of some of these factors, but his arguments are meritless. He asserts the district court, in finding he would continue to pose a danger to the public, overlooked that his age and infirmity lessened the likelihood of recidivism. But there was no oversight on this issue. The court specifically noted Sarno did not personally undertake the bombing or the robberies but "directed others to do these things and received the benefit of their criminal activities." His current physical condition, the court concluded, would not prevent him from returning to his old ways and using subordinates to commit crimes. This reasoning seems eminently sensible to us. Youth and vigor might have been necessary for Bill Sikes and the Artful Dodger to ply their trades, but Fagin could still run a criminal enterprise as an old man.

Sarno similarly suggests the district court judged his criminal history too harshly. He acknowledges the robberies and the bombing but asserts he personally "did not harm anyone." Even if true, this is faint praise indeed. Sarno may not have carried out these crimes, but he ordered the bombing and exercised control over the robberies. *Volpendesto*, 746 F.3d at 297. Illegal gambling, racketeering conspiracy, robbery, and the use of explosives are all grave and violent crimes with potentially deadly consequences for their victims. Sarno played a central role in these illegal activities.

In addition to these crimes, the court considered Sarno's long career "entrenched in organized crime and its street crews long before his conviction in this case." His criminal history spanned decades; it involved not only racketeering conspiracy and running an illegal gambling business but also predatory lending, extortion, and violent debt collection. Before being sentenced in this case, Sarno already had multiple felony convictions. The district court's assessment of these matters was "well within the broad discretion a judge possesses under § 3582(c)(1)." *United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021).

Next, Sarno objects to what the district court did not say. During the hearings, the court expressed concern that, if released, the inability to find legitimate work coupled with substantial healthcare costs would tempt Sarno to resume his criminal career. In response, Sarno detailed the health insurance he would obtain upon release and informed the court that a generous friend had offered to set up a trust that would cover Sarno's medical expenses for as long as necessary. In his order denying compassionate release, however, the district judge did not mention this issue or evidence.

A district court must provide "reasonable assurance that it at least considered the prisoner's principal arguments." *United States v. Newton*, 996 F.3d 485, 489 (7th Cir. 2021). This does not mean the court's opinion must address every issue that arises in compassionate-release proceedings. *See United States v. Sanders*, 992 F.3d 583, 588 (7th Cir. 2021). Instead, an opinion is adequate when it reflects individualized assessment of the prisoner's circumstances and primary arguments and makes the judge's thinking clear. *Newton*, 996 F.3d at 491.

The district court's opinion here did that. The court accepted (for argument's sake) Sarno's primary contention that his medical condition met the statutory threshold for a sentence reduction. The court then denied compassionate release based on Sarno's specific circumstances. The evidence Sarno says the district court should have discussed concerned one risk factor (financial pressure) relating to one aspect (likelihood of recidivism) of one relevant factor under § 3553(a) (protecting the public from further crimes by Sarno). If the court had cited this risk factor to deny the motion while ignoring the rebuttal evidence offered, Sarno might have a point. But the court didn't do that. The issue's omission from the court's ruling indicates that the judge ultimately did not think it relevant to resolving the motion. "Federal law does not contain a mandatory-dictum policy, under which a judge must consider every possible issue." *Ugbah*, 4 F.4th at 598. The district court's opinion satisfies us that it properly exercised its discretion and considered all appropriate matters.

Sarno's final argument is a procedural one that bundles together the constitutional rights to confer with counsel and to be heard in a meaningful way. During proceedings, the government advised the district court that Sarno had been transferred to the United States Medical Center for Federal Prisoners in Springfield, Missouri (MCFP Springfield), where he would receive round-the-clock nursing care and remain until he was healthy enough to undergo knee-replacement surgery. Sometime after the second hearing, Sarno's counsel learned he had been transferred temporarily from MCFP Springfield to an outside medical facility for treatment. Sarno's attorney was not told where and was not able to speak with him in the time leading up to the court's April 14, 2021, ruling.

Thus, while Sarno was held incommunicado, he could not confer with his attorney to respond to the assertions in the government's April 7, 2021, memorandum. Sarno contends he was denied the right to communicate with counsel about the government's new allegations *and* to respond to those allegations before the court ruled on his motion.

This argument was not timely raised below. Sarno's attorney did not alert the district court to any problem contacting his client until he moved for reconsideration. And even then, the three-sentence assertion was underdeveloped. Nor did counsel ask for a continuance. He responded to the government's April 7 memorandum that same day but never requested a delay in proceedings until he could reach Sarno. The response suggested another hearing only *if* the court still questioned the information Sarno had already submitted. Otherwise, counsel urged the court to grant the compassionate-release motion.

An argument first raised or developed in a motion to reconsider usually comes too late to preserve the issue for appellate review. *Pole v. Randolph*, 570 F.3d 922, 938 (7th Cir. 2009). At most, we would review an argument not presented to the district court during § 3582(c) proceedings for plain error. *See United States v. Williams*, 32 F.4th 653, 655 (7th Cir. 2022). Under plain-error review, reversing the district court is appropriate only if we find: (1) an error, (2) that is clear or obvious under the law, (3) affects a prisoner's substantial rights, and (4) seriously impugns the fairness, integrity, or public reputation of judicial proceedings. *United States v. Burns*, 843 F.3d 679, 687 (7th Cir. 2016).

Initially, we have doubts whether the first two elements are met in this context. Sarno does not assert a constitutional

right to appointed counsel; there is none in § 3582(c) proceedings. *United States v. Clayton*, 811 F.3d 918, 921 (7th Cir. 2016). Rather, he invokes the right to access the attorney he retained. But although "an inmate's opportunity to confer with counsel is a particularly important constitutional right which the courts will not permit to be unnecessarily abridged," *Dreher v. Sielaff*, 636 F.2d 1141, 1146 (7th Cir. 1980), preventing escape and ensuring public safety "'are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees,'" *id.* at 1145–46 (quoting *Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979)). Sarno doesn't dispute that the temporary inability to communicate with his attorney was predicated at least partially on valid security concerns.

Moreover, "a § 3582(c)(2) motion does not require a do-over of an original sentencing proceeding where a defendant is cloaked in rights mandated by statutory law and the Constitution." *United States v. Young*, 555 F.3d 611, 614–15 (7th Cir. 2009) (internal quotation marks omitted). A district judge has "considerable leeway in choosing how to adjudicate § 3582(c)(2) sentence-reduction motions." *Id.* at 615. So, whether the district court was obliged to explicitly invite Sarno to respond to the government's April 7 memorandum before ruling on the motion is an unsettled question. *See id.* (declining "to identify the minimum procedural protections that are required in § 3582(c)(2) proceedings").

But we need not resolve whether there was error here that was clear or obvious. Under the third element of plain-error review, a prisoner's substantial rights were not affected unless he "can show a reasonable probability that, but for the error, the outcome of the proceeding would have been

different." *Burns*, 843 F.3d at 688 (internal quotation marks omitted). In these circumstances, this means Sarno must show a reasonable probability that, had he been able with counsel's assistance to respond meaningfully to the government's April 7 assertions, the district court would have granted his compassionate-release motion.

We see no reasonable probability that the information or arguments Sarno now proffers would have changed the district court's judgment if he had presented them below.

First, he challenges the government's contention that MCFP Springfield could adequately care for his medical needs because, since arriving there, he was twice transferred to outside facilities for treatment of acute problems (pneumonia and suspected tuberculosis). It could be argued, as the government does, that these transfers show MCFP Springfield *is* capable of ensuring Sarno receives all necessary medical care. But even if the transfers suggest the inability to provide sufficient care for his chronic disabilities, the level of care Sarno receives while incarcerated is relevant, if at all, to the threshold question of whether extraordinary and compelling reasons exist to justify a sentence reduction. The district court assumed Sarno met that threshold but found § 3553(a) considerations made reduction inappropriate. There is no reason to think Sarno's present contentions (of slightly worse medical circumstances) might have changed the district judge's mind. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) (noting "courts are not compelled to release every prisoner with extraordinary and compelling health concerns").

Second, Sarno asserts spurious information provided by the government led the district court to conclude wrongly that he "remains in contact with and dependent upon

previous associates from his life of organized crime." Sarno disputes the extent to which the three individuals the government and the court cited stayed in touch with him, deposited money in his prison account, or had criminal records. We agree the district court shouldn't have assumed one individual (Sarno's nephew by marriage) to be of unsavory character simply because he is related to a convicted organized crime boss. The other men, however, did contribute to Sarno's prison account and either had a criminal record or were reliably implicated in Sarno's illegal enterprise. In any event, this was a relatively minor issue in the court's analysis compared to Sarno's serious criminal history and danger to the public. Even if the district judge accepted the more nuanced circumstances Sarno sketches, there is no reasonable basis to think he would have granted compassionate release. Even "one good reason for denying a compassionate-release motion suffices," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), and here there were several. Thus, there was no plain error.

The district court did not abuse its discretion or otherwise err in denying Sarno early release.

AFFIRMED